UNITED STATES of America, Appellee,

v.

Sandra Elaine SMITH, Appellant.

No. 78–2623.

United States Court of Appeals,
Ninth Circuit.

May 1, 1979.

---

Alan R. Freedman, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Robert Archie, Las Vegas, Nev., for appellant.

Before TRASK and ANDERSON, Circuit Judges, and WYATT,* District Judge.

WYATT, District Judge:

Sandra Smith appeals from a judgment of conviction for possession of a controlled substance (heroin) with intent to distribute (21 U.S.C. § 841(a)(1)). The judgment was entered on a jury verdict in the United States District Court for the District of Nevada. The sentence was a fine of $10,-000; imposition of sentence as to imprisonment only was suspended and appellant was placed on probation for three years. We affirm the judgment of conviction.

1.

Acting on a tip from a confidential informer that appellant was in possession of heroin, Las Vegas police, at about three o'clock in the morning of March 17, 1977, at D and Harrison Streets in Las Vegas, stopped and searched without a warrant an automobile. The automobile was being driven by Lawrence Booker. Appellant Smith was in the front passenger seat.

The officers first stopped the car and took the two occupants to its rear. They then began a search. On the front seat they found a loaded pistol. Under the passenger side of the front seat they found tissue paper packets which contained what appeared to be narcotic drugs. They then told the two occupants that they were under arrest. The search was continued and after opening the glove compartment (which had been locked) they found hidden near the top of the compartment a brown paper sack with more small tissue packets. It was later ascertained that the several found packages contained, among other things, 363 grams of heroin. It was also later determined that the pistol was registered to appellant Smith; the automobile had been rented for Smith a few weeks earlier by her ex-husband.

2.

In the latter part of March, 1977, Smith and Booker were indicted by a grand jury of the State of Nevada for drug and gun offenses. There was a pre-trial motion by one or both defendants in the state court to suppress as evidence the gun and the drugs. The State attempted to show probable cause for the search solely by the testimony before the Nevada grand jury, specifically that of the officer who ordered the car stopped. Naturally, in this testimony before the grand jury, the officer had not addressed a search and seizure problem but had concerned himself solely with whether an offense had been committed. The state court judge, by order filed August 11, 1977, granted the motion to suppress.

Thereafter, the prosecution of the state court indictment was dropped, apparently by an oral motion by the prosecution at a calendar call to dismiss the state court indictment (Record ("R"), vol. VI, p. 284). We are told in appellant's brief (p. 3) that this was on August 19, 1977.

3.

On October 27, 1977, an indictment against Smith (but not Booker) was returned and filed by a federal grand jury in the District of Nevada. There were two counts, but one of these counts was later dismissed at trial on motion of the government (R VI, p. 206) and for present purposes may be disregarded.

The count on which the present judgment of conviction was entered charged possession of heroin and cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). All reference to cocaine was later deleted from the indictment on motion of the government (R VI, p. 206) and may be disregarded here. (The government gave as its reason that the amount of cocaine was too small to permit an inference of an intent to distribute (R VI, p. 216)).

Appellant moved to suppress as evidence the drugs and the statements made by her

---

* Honorable Inzer B. Wyatt, United States District Judge, Southern District of New York, sitting by designation.

when arrested. It was claimed that the arrest was unlawful and also the search, the statements being thereby made inadmissible. The District Court had a hearing. The government called the officer who ordered the car stopped. His testimony at the hearing was much more detailed in the area of probable cause than his testimony before the Nevada grand jury. Appellant offered no evidence at the hearing. The District Judge denied the motion (R V, pp. 41–43), without prejudice to its renewal at trial.

The trial commenced on June 29, 1978, and continued for three and a half days. Booker testified for the government that he had met appellant early on March 17 and got from her the keys of the car he was driving when they were stopped. Appellant offered no evidence at trial. The jury returned a guilty verdict, sentence was imposed, and this appeal followed.

### 4.

Appellant contends that search of the car without a warrant was a violation of the Fourth Amendment prohibition against "unreasonable searches and seizures." Admission of the seized drugs in evidence is therefore claimed to be reversible error.

■ Wisely, there is no claim for appellant that the state court ruling that the evidence be suppressed has significance for the case at bar. The District Judge "was correct in making an independent inquiry on the constitutional validity of the state search, irrespective of whether there had been such an inquiry by the state court, or how such an inquiry had turned out." *United States v. Garrett,* 565 F.2d 1065, 1068 (9th Cir. 1977), *cert. denied, Morgan v. U. S.,* 435 U.S. 974, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978). It may be noted that the evidence in the state court was scanty whereas in the federal court it was overwhelming.

The rule is that "all that is required to stop and search an automobile on the highway is probable cause to believe that it contains any type of contraband." *United States v. Abascal,* 564 F.2d 821, 828 (9th Cir. 1977), *cert. denied, Frakes v. U. S.,* 435 U.S. 953, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978).

■ The issue here, then, is whether there was probable cause to believe that drugs were in the automobile. The showing for the government was so strong as to make the argument for appellant almost, if not entirely, frivolous.

The Las Vegas officers were relying on an informer with whom the Sergeant had dealt in the past on three occasions; each time his information was true, each time heroin had been seized, and on one occasion a homicide had been revealed.

This informer, on March 13, 1977, advised the Sergeant that appellant would be returning in a few days from Los Angeles to a hotel in Las Vegas and bringing with her some twenty-five to thirty thousand dollars worth of heroin, and that she was bringing it in her 1977 rose-colored Lincoln Continental. The Sergeant secured a search warrant for the Lincoln.

The informer advised the Sergeant at about 10 o'clock in the evening of March 16 that Smith was back in Las Vegas but had changed cars and was now driving a blue Ford. Thereafter, the informer telephoned several times, advising the Sergeant that Smith had heroin at several locations, that she was going to pick him (the informer) up, and that they were going to one of the locations and would cut the heroin there. Finally, at about 2:45 a.m. on March 17, the informer said that Smith was leaving her residence in the blue Ford and that she had heroin with her in the car.

Meanwhile, since 10 o'clock in the evening of March 16, several Las Vegas police officers had kept the blue Ford under observation. When the 2:45 a.m. message was received from the informer, the Sergeant told the officers on surveillance to stop the blue Ford and to do whatever was necessary. The stopping, search, and arrest followed.

There was abundant probable cause and a search warrant had already been secured for the Lincoln; the switch to the blue Ford made this warrant useless, and there was no time to secure a warrant for the blue Ford.

**5.**

Counsel for appellant assigns as error that the trial court did not require the government to supply the name of the informer.

It appears that during the suppression hearing (R V) in the court below, there was reference to a motion for Smith (made as part of an omnibus motion) to require the government to disclose the name of any informer on whom the government relied. During this discussion the government stated (R V, p. 12) that it intended to call the informer as a witness but was having trouble in finding "him". The government agreed that if it located the informer, his identity would be revealed to defense counsel. The government did not locate him, his identity was not revealed, and he did not testify.

Counsel for Smith asserts in his Brief (p. 22) that he relied on a statement by the government that the informer would be identified ten days before trial. This assertion is somewhat disingenuous and cannot be accepted. The transcript containing the government's statement (R V, pp. 11, 12), fairly read, is clear that the government undertook to identify the informer only if the government could locate him so that he could testify.

The record shows, moreover, that from the trial testimony of Booker taken with that of Sergeant Park at the earlier suppression hearing as well as at trial, the informer had to be Rocky West who was with Booker and appellant Smith just before they drove off in the blue Ford and were stopped and arrested. Defense counsel thus knew at trial the identity of the informer, as seems to be conceded (Brief, p. 23).

It is settled law in this Circuit that the burden of proof is on the defendant to show a need for disclosure of an informer's identity. *United States v. Marshall,* 526 F.2d 1349, 1359 (9th Cir. 1975) *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976). It is not seriously claimed here that the defendant met this burden; instead, the argument is entirely speculative. It is said (Brief, p. 22) to have been "very possible", had his identity been revealed, that the defense could have found the informer and "had the possibility" of securing his testimony for the defense. But the defense knew that Smith and Booker had been at the Moulin Rouge Hotel with Rocky West and had left Rocky for the drive during which they were stopped and arrested. Nothing prevented the defense from calling Rocky as a witness, if he were found, and this seems to be conceded (Brief, p. 23). The argument (Brief, p. 23) is that "possibly some other informant may have been involved . . . .". This argument is without merit. "Mere speculation that the informer might possibly be of some assistance is not sufficient to overcome the public interest in the protection of the informer." *Lannom v. United States,* 381 F.2d 858, 861 (9th Cir. 1967), *cert. denied,* 389 U.S. 1041, 88 S.Ct. 784, 19 L.Ed.2d 833 (1968).

**6.**

It is argued for appellant (Brief, pp. 20–22) that there was not sufficient evidence to show that she possessed the heroin or that she intended to distribute it.

As to her possession, the evidence was that the heroin was found in a car which had been rented for her and which she had been using; that the heroin was hidden under the seat where she had been riding and in the locked glove compartment of the car in front of that seat; that Booker, although he was driving the car at the time of the arrest, testified to securing the keys from Smith and knew nothing about the heroin; and that after her arrest, Smith made a statement to Officer Park which showed an awareness on her part that the heroin was in the car. From this evidence, the jury was entitled to conclude that Smith was in control of the car and in at least constructive possession of the heroin.

As to an intent to distribute, this can be inferred from the quantity of drugs involved. In *United States v. Ramirez-Rodriquez,* 552 F.2d 883, 884–885 (9th Cir. 1977), there were 13.74 grams of a mixture con-

taining 30% pure cocaine. This Court approved the principle that intent to distribute could be inferred from the quantity involved. In that case, however, because the quantity involved was not large, the Court relied, in affirming a conviction, on the presence of other circumstances.

In the case at bar, there were at least seven separate packets of mixtures containing various percentages of pure heroin, from unknown to 1.5% to 3.5% to 12%. The total weight of the mixtures was slightly over 360 grams (R VI, pp. 60–70). This certainly justifies an inference that the packets of heroin were not simply for the personal use of appellant. Moreover, there were other circumstances, including the carrying by appellant of a loaded pistol and her possession in her purse when arrested of $3,200 in currency.

We have no difficulty in finding the evidence sufficient to support the conviction.

### 7.

Appellant makes several arguments related in one way or another to the prior proceedings in the courts of Nevada. They are each so lacking in merit as to deserve no more than brief discussion.

### a.

█ It is argued (Brief, pp. 23–25) that the indictment in the case at bar should have been dismissed as in violation of the "Petite policy". The reference is to *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960), where there were two separate convictions in different federal district courts for separate offenses arising out of the same transaction. The defendant had unsuccessfully invoked double jeopardy to prevent the second conviction. After the Supreme Court granted certiorari to review the second conviction on double jeopardy grounds, the government moved that the second judgment of conviction be vacated and the cause remanded for dismissal of the indictment, not on the merits as to double jeopardy but because it was not the policy of the Department of Justice that several offenses in a single transaction should be the basis of multiple prosecutions. The Supreme Court granted the motion and did not reach the merits. In submitting its motion, the government referred to its policy as to multiple federal prosecutions as "closely related to that against duplicating federal-state prosecutions" (361 U.S. at 531, 80 S.Ct. at 451).

The policy referred to in the *Petite* case had to do with a prosecution in a state court completed to final judgment. In the case at bar, there was no completed state prosecution; for reasons best known to themselves, the Nevada authorities elected to drop the state prosecution before any trial. Moreover, even were there a violation of some policy of the Attorney General, this would be no defense to the present indictment. See *United States v. Chavez,* 566 F.2d 81 (9th Cir. 1977).

### b.

█ It is argued (Brief, pp. 25–27) that the indictment should have been dismissed because the grand jury was not informed of the proceedings in the Nevada courts.

It is impossible to determine from this record what the grand jury was informed, since there was no grand jury transcript; the argument here has no basis except the speculation of counsel for appellant. Moreover, the Magistrate below found that the grand jury had been informed of the Nevada proceedings (R VI, p. 131). The government's brief on this appeal (p. 16) tells us that the grand jury was so informed.

But if it be assumed that the grand jury was not so informed, this would in no way affect the validity of the indictment. Some states, for example California (*Johnson v. Superior Court,* 15 Cal.3d 248, 124 Cal.Rptr. 32, 539 P.2d 792 (1975)), impose a duty on the prosecution to disclose to the grand jury evidence which would negate guilt. This is not, however, the rule in the federal system, *United States v. Y. Hata & Co., Ltd.,* 535 F.2d 508, 512 (9th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 87, 50 L.Ed.2d 92 (1976).

The basic principle is firmly stated in *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956):

"An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

c.

Appellant argues (Brief, pp. 27–30) that her constitutional rights were violated when the government was permitted to relitigate in the court below the search and seizure issue, after suffering an adverse decision in the Nevada court. Appellant urges an analogy to *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). This same argument was made to this Court and rejected in *United States v. Garrett,* 565 F.2d 1065 (9th Cir. 1977), *cert. denied, Morgan v. U. S.,* 435 U.S. 974, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1978). We can do no better than to refer to that opinion (at pages 1068–69) for the reasons for the rejection.

The judgment of conviction is affirmed.