**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel Thomas LEWIS,
Defendant-Appellant.**

No. 82–1540.

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1983.
Decided June 9, 1983.

Frederick W. Lauck, Troy, Mich., for defendant-appellant.

Leonard R. Gilman, U.S. Atty., Susan M. Daltuva, Sheldon Light (argued), Asst. U.S. Attys., Detroit, Mich., for plaintiff-appellee.

Before LIVELY and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This is a direct appeal involving a drug smuggler apprehended at the Detroit airport after deplaning from a Miami, Florida flight. Appellant Daniel Lewis (Lewis) charges error resulting from an asserted search of his luggage by law enforcement officers using police dogs trained to detect concealed narcotics and the legal sufficiency of a grammatically incorrect search warrant.

The salient facts of this case are not disputed. Lewis was observed at the Miami, Florida airport purchasing a ticket to Detroit, Michigan under one of the two different names affixed to his suitcase. During an ensuing interview with a Miami police detective, which is not challenged on appeal, Lewis stated he resided in Detroit; however, he identified himself to the officer with a Florida driver's license issued in a third name.

As Lewis boarded his flight, his luggage, outside of his presence, was intermingled with numerous other items of luggage. A specially trained police dog was permitted to sniff the array of assembled luggage. The dog, in the words of his handler, displayed "not a strong positive reaction" to the appellant's suitcase. The suitcase, nevertheless, was immediately thereafter loaded aboard Lewis' plane for transportation to Detroit in the normal fashion.

Two DEA agents and a state police officer, alerted by the Miami police, observed Lewis deplane from his flight at the Detroit airport. The appellant bypassed the baggage claim area assigned to his flight and proceeded to the continuous baggage claim area assigned to another incoming flight. From this vantage point he kept a continuous vigil of his baggage claim area for a period of approximately 15 minutes. Lewis thereafter proceeded to his carrier's claims office, ignoring his luggage, remained for only thirty seconds, observed the surveilling agents and finally departed the area.

The DEA at that point enlisted the assistance of another dog trained in the detection of concealed narcotics. As in Miami, the appellant's bag was comingled with four other suitcases and the dog was permitted to examine the assembled luggage. The dog exhibited a "positive reaction for controlled substances" when sniffing appellant's suitcase similar to the manner in which he had reacted on approximately 100 previous occasions when he had detected concealed narcotics.

Three hours thereafter, a man telephoned the airline baggage claims office, identified himself by the name in which appellant's ticket had been issued and stated that he "had not had time" to claim his luggage and that a friend would collect the suitcase. One hour later, a man did claim the luggage and advised the DEA agent that he had been paid $20 by a "Tom" Lewis to recover the luggage here in issue and thereafter place it in a vehicle parked at a named bar. The DEA agent thereupon seized the suitcase, obtained a search warrant from a United States Magistrate, opened it and discovered 278.58 grams of cocaine.

A bench trial was conducted on these stipulated facts and Lewis was found guilty of possession with intent to distribute the cocaine. 21 U.S.C. § 841(a)(1). He was sentenced to four months imprisonment and two years probation.

As previously noted, Lewis here contends that a warrant should have been required as a condition precedent to the canine sniffing. Appellant argues the existence of a privacy interest in the contents of locked luggage which may not be invaded by the use of trained dogs without a showing of probable cause. It must be emphasized that Lewis does not contest, and did not contest below, the removing of his luggage from its normal course of handling and co-mingling it with other baggage as an illegal seizure. Accordingly, this Court is confined to a review of Fourth Amendment infringements, if any, resulting from the use of trained canines in detecting concealed narcotics.

Five circuits of the six that have addressed the issue have concluded that the use of a trained dog within the facts disclosed in this action do not constitute a

search within the mandate of the Fourth Amendment. *United States v. Waltzer*, 682 F.2d 370 (2d Cir.1982) (cocaine detected in suitcase at airport); *United States v. Goldstein*, 635 F.2d 356 (5th Cir.), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981) (cocaine detected in suitcase at airport); *United States v. Klein*, 626 F.2d 22 (7th Cir.1980) (cocaine detected in suitcases at airport); *United States v. Sullivan*, 625 F.2d 9 (4th Cir.1980) (liquid PCP detected in suitcases at airport); *United States v. Burns*, 624 F.2d 95 (10th Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (cocaine detected in suitcase in motel room).[1]

The single contrary position has been enunciated by the Ninth Circuit in *United States v. Beale*, 674 F.2d 1327 (9th Cir. 1982); *pet. for cert. filed*, 51 U.S.L.W. 3321 (Oct. 18, 1982) (No. 82–674), a case decided prior to the Second Circuit's decision in *Waltzer, supra*, and explicitly rejected therein. 682 F.2d at 373. The Ninth Circuit in *Beale* concluded that canine detection of odors is a "limited" intrusion into the privacy expectations covered by the Fourth Amendment that does not require a warrant supported by probable cause, but does require a " 'founded' or 'articulable' suspicion." 674 F.2d at 1335 (citations omitted).

We are persuaded that the majority position states a more mature and reasonable rule. The odor emanating from even a closed object is accessible to the public foreclosing an expectation of privacy even though the owner has taken steps to shield his property within the closed container from perception by other senses, such as sight.

Nor is it critical that a trained dog is required to detect the odors. In *United States v. Knotts*, —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), a unanimous Supreme Court upheld the use of directional "beepers" placed on drums of precursor

chemicals employed in manufacturing PCP as an aid to maintaining visual surveillance of the drums while traveling over the nation's highways. The Court found that "[n]othing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed on them at birth with such enhancement as science and technology afford." *Id.* at ——, 103 S.Ct. at 1086.

■ Appellant's second argument approaches the frivolous. The printed form for the search warrants utilized herein included two printed prepositional phrases to describe the area of the search and contemplated that one would be selected in drafting the document. The line reads in its original form:

Affidavit having been made before me by [    ] that he has reason to believe that (on the person of, on the premises known as) [    ] there is now being concealed certain property, namely [    ].

In this case, the government redacted portions of the options given between the parentheses and inserted the word "object" so that the search warrant identified the relevant location as "on the object known as" the brown vinyl suitcase, which was then more particularly described.

The entirety of Lewis's objection is that the warrant, which resulted in the inspection of the baggage's contents, is void because it read *"on the object known as"* etc., rather than *"in"* the object.

Such hypertechnical "rules" of construction have long been held to be moribund. Moreover, a reading of the warrant discloses that it otherwise clearly and specifically describes the suitcase, its present location, and the property to be seized. As this Court stated in *United States v. Bowling*, 351 F.2d 236, 234 (6th Cir.1965):

1. *See also Horton v. Goose Creek Ind. School District*, 690 F.2d 470 (5th Cir.1982), wherein the Fifth Circuit catalogs the decisions of federal and state courts on this issue and concludes that the majority of jurisdictions have, pursu-

ant to somewhat different rationales, "adopted a doctrine of 'public smell' analogous to the exclusion from fourth amendment coverage of things exposed to public 'view.' " *Id.* at 477 (citations omitted).

The Supreme Court has also made clear that highly technical attacks upon affidavits and warrants where sought and used are not to be encouraged.

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States v. Ventresca, supra,* 380 U.S. at 108, 85 S.Ct. at 746.

Wherefore, the appellant's conviction is hereby AFFIRMED.