### Norfolk

DEBORAH PLASTER ALLEN

and

JAMES McKINLEY ALLEN

v.

COMMONWEALTH OF VIRGINIA

No. 0846-85

Decided February 17, 1987

COUNSEL

John W. Drescher (Pickett, Lyle, Siegal, Drescher and Croshaw, on brief), for appellants.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Deborah Plaster Allen and James McKinley Allen (appellants) appeal from judgments of the Circuit Court of the City of Chesapeake (trial court) which convicted Deborah of possession of marijuana, possession of cocaine, and possession of methamphetamine, and James of possessing a concealed weapon (a .38 caliber revolver), after having been convicted of a felony involving the use of a firearm, possession of cocaine, and possession of marijuana with intent to distribute as an accommodation.

All counts of the indictments of each appellant were tried together.

In their petition for appeal appellants assigned several errors; however, the appeal was granted limited to issues of: (1) whether appellant James McKinley Allen was unlawfully detained and unreasonably searched by law enforcement personnel without probable cause in violation of the Fourth Amendment to the Constitution of the United States; and (2) whether, contrary to the provisions of Code § 19.2-187, the trial court erroneously admitted three certificates of analysis prepared by the Bureau of Forensic Science into evidence against each appellant, as proof of the composition of certain substances taken from the person of James Allen and from the residence of both appellants.

On October 27, 1984, an informant advised Chesapeake police officer W. H. Barber that a motorcycle gang known as the "Southern Riders" (gang) had a clubhouse in the home of appellants. The informant further told Barber that he previously observed illegal drugs in the house; that he saw members of the gang selling the drugs from the house to various Tidewater area customers; and that several members of the gang discussed with him the manufacture of methamphetamine. On that same day the informant told Suffolk police officer C. E. Lilly that there was a "party" at appellants' home during which stolen guns, motorcycle parts and marijuana were being swapped.

Pursuant to the information furnished them, Officers Barber and Lilly surveyed appellants' residence for three to four hours. During that time they observed eighteen vehicles parked in the yard and thirty people on the premises dressed in colored shirts of the type known to be worn by the gang. A number of these people were seen walking between appellants' house and silos located on the property. Four people removed shotguns or long-barreled guns from one of the vehicles and stood guard outside the house.

Following their lengthy surveillance of activities on appellants' property, the officers procured a search warrant, assembled a team of approximately twenty police officers and returned to appellants' house. As Lilly's vehicle approached appellants' house on the single lane driveway leading from the house to the public highway, it encountered a van coming from the direction of the house. The vehicles stopped, facing each other, on the driveway. Lilly, in-

tending to "check out" the occupants of the van, approached the driver's side with his gun drawn and visible. He identified himself and informed the van's occupants that he had a search warrant for the residence of appellant "Jim Allen." When the occupants were directed to vacate the van, the driver identified himself as Jim Allen and voluntarily advised Lilly that he was carrying a concealed pistol, whereupon Lilly proceeded to search him. Allen offered no resistance. The search of Allen's person produced a .38 caliber handgun, a razor blade, a film canister containing substances believed to be cocaine and marijuana, other drug paraphernalia, and $1,785 in cash. Allen was handcuffed and detained in a police car while the search of the premises progressed. The search warrant was executed and various items appearing to be illegal drugs and paraphernalia were found along with evidence that the premises was the residence of appellants.

At trial, the Commonwealth sought to prove the identity of the substances found on appellant James Allen and in the premises occupied by both appellants, by the introduction of certificates of analysis without the presence of the scientist who prepared the certificates. The certificates were admitted over appellants' objection that the Commonwealth had not first proved compliance with the seven day provision of Code § 19.2-187.

When the Commonwealth rested, James Allen moved to strike the Commonwealth's evidence obtained in the search of his person on the ground that when he was detained he was effectively arrested without probable cause and searched in violation of the Fourth Amendment. The motion to strike was overruled. Various other motions were made on behalf of each appellant concerning the sufficiency of the evidence found in the house. Some were sustained, others overruled; whereupon, the defense rested and appellants were convicted.

## I. THE SEARCH OF JAMES McKINLEY ALLEN

On information that illegal activity was abounding at or around appellants' residence the police conducted a surveillance for several hours during which time they observed conduct on the premises which reasonably led them to believe the information they were given was accurate. Immediately following the surveillance they obtained a search warrant authorizing a search for illegal

drugs and associated paraphernalia, records, and papers showing the legal occupants of the dwelling. The premises to be searched was described as follows:

> Two story, single family dwelling with white siding and dark colored roof to include the curtilage[1] of this property which is approximately 4 metal silos and a two story barn in the same area as the silos, known as 3937 Cornland Road, Chesapeake, Va.

As the police entered the premises, they were aware from their previous surveillance that a van near the house contained shot guns and long-barreled guns which were openly displayed by four men who appeared to stand guard. The van driven by appellant James Allen traveled along a single lane driveway which led from the house where the guns were seen by the police. The police vehicle was driven along the same driveway toward the house. Each vehicle stopped as it approached the other. When Officer Lilly left the police vehicle and approached Allen's van it was reasonable that he arm himself as he did. Lilly informed Allen that he had a search warrant and directed Allen to get out of the van. The record does not indicate that Lilly threatened or questioned Allen before Allen stated that he was carrying a concealed gun, a loaded .38 caliber pistol. Lilly then searched Allen.[2]

In *Michigan v. Summers*, 452 U.S. 692 (1981), the Court approved the detention of a defendant who was leaving his house as the police approached with a warrant to search the house. The Court stated that the existence of a search warrant provided an objective justification for the detention. *Id.* at 703. Viewed in the light most favorable to the Commonwealth the evidence before us compels a decision consistent with *Summers*. We find no distinction between an owner descending the front steps of his house where a search warrant is about to be executed, and an owner leaving his house by the driveway in a motor vehicle.

---

[1] "At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life . . . .'" *Oliver v. United States*, 466 U.S. 170, 180 (1984) (citations omitted). It is the "land immediately surrounding and associated with the home." *Id.*

[2] At the trial, Lilly stated that when Allen told him he was carrying a weapon he believed Allen to be a convicted felon.

■ At the moment of the detention appellant James Allen's statement that he was carrying a concealed weapon furnished sufficient probable cause to justify the search of his person. Moreover, only a short while before, the police observed men armed with long-barreled guns only a few feet from where Allen's van stopped. To let the van pass without close scrutiny might well have resulted in the police being caught in a cross fire between occupants of the house and those in the van. In support of its decision in *Summers*, the United States Supreme Court reasoned that "the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence" and that "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 702-03. Considering the information supplied by the informant and gathered by the police surveillance, we hold that James Allen's detention was permitted by *Summers* and the search of his person which followed was fully justified by the attending circumstances and his admission that he was carrying a concealed pistol.

Accordingly, the conviction of James McKinley Allen for violation of Code § 18.2-308.2 is affirmed.

## II. *THE CERTIFICATES OF ANALYSIS*

■ In pertinent part, Code § 19.2-187 provides:

> In any hearing or trial of any criminal offense, a certificate of analysis of a person performing analysis or examination, performed in any laboratory operated by the Division of Consolidated Laboratory Services or authorized by such Division to conduct such analysis or examination . . . when such certificate is duly attested by such person, shall be admissible in evidence as evidence of the facts therein stated and the results of the analysis or examination referred to therein, *provided (i) the certificate of analysis is filed with the clerk of the court hearing the case at least seven days prior to the hearing or trial* (emphasis added).

Code § 19.2-187 creates an exception to the hearsay rule and permits the written analysis to be admitted into evidence without requiring the in-court presence of the person who prepared the doc-

ument. *Gray v. Commonwealth*, 220 Va. 943, 945, 265 S.E.2d 705, 706 (1980).

The record in this case discloses that substances which appeared to be illegal drugs were found on James Allen's person and in the residence which was the subject of the search warrant. The substances were forwarded to the Bureau of Forensic Laboratories in Norfolk where analyses were made by laboratory scientists and three certificates were prepared which set forth their findings. The certificates were filed in the general district court on November 23, 1984. On December 17, 1984, appellants waived the preliminary hearing and the case was certified to the circuit court grand jury. The grand jury returned indictments against appellants on January 2, 1985 and trial was held March 19, 1985. The certificates were entered into evidence over appellants' objection to their admissibility on the ground that the Commonwealth had not shown that they were filed in the clerk's office of the trial court within at least seven days prior to the trial.

■ The Commonwealth points out that the certificates were filed in the general district court at least seven days prior to the trial, and would have us assume that the district court file, including the certificates of analysis, was before the grand jury when the indictments were handed down more than two months before trial. The record gives no indication that such is the case. Furthermore, even if we conclude, from a reading of the trial transcript, that the certificates were in the circuit court file at the time of trial, nothing in the record indicates when they were filed with the clerk of the circuit court.

We believe that, in the absence of the preparer of the certificate as a witness at trial, the failure of the Commonwealth fully to comply with the filing provisions of § 19.2-187 renders the certificate inadmissible. The statute deals with criminal matters, and it undertakes to make admissible evidence which otherwise might be subject to a valid hearsay objection. Thus, the statute should be construed strictly against the Commonwealth and in favor of the accused. This rule of construction is particularly applicable to the filing requirements of § 19.2-187; these requirements are contained in a proviso to the Code section. The proviso serves to limit and restrain what precedes it in the statute.

*Gray*, 220 Va. at 945-46, 265 S.E.2d at 706 (citations omitted). Code § 19.2-187 requires that the certificate shall be filed with the clerk of the court hearing the case at least seven days prior to hearing or trial. The statute does not authorize filing in the general district court as a substitute for the proviso that the certificates be filed in the circuit court at least seven days prior to the hearing in the circuit court; rather it specifically requires the certificate to *"be filed with the clerk of the court hearing the case at least seven days prior to the hearing or trial."* (emphasis added). Here, it was the circuit court "hearing the case" in a "trial" on its merits. Nothing in the record indicates when the certificates were filed in the circuit court clerk's office. To avoid the valid hearsay objection strict compliance is required. In the absence of strict compliance, the evidence was inadmissible and prejudice to the defendant is presumed. *See Gray*, 220 Va. at 946, 265 S.E.2d at 706.

We conclude that the admission of the certificates into evidence in each case against Deborah Plaster Allen requires reversal of each offense of which she was convicted; however, because these reversals are for trial error only and not evidence insufficiency, we will remand her cases for new trials if the Commonwealth be so advised.

We have affirmed the conviction of James McKinley Allen for violation of Code § 18.2-308.2. As to his convictions for possession of cocaine and marijuana, we conclude that the admission into evidence of the three certificates requires reversal; however, because the convictions are for trial error, and not for evidentiary insufficiency, we remand those cases for new trials if the Commonwealth be so advised.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Barrow, J., and Hodges, J., concurred.