## Richmond

WILLIAM EDWARD BROWN

v.

COMMONWEALTH OF VIRGINIA

No. 0627-89-2

Decided September 1, 1992

COUNSEL

Thomas H. Tomlin, for appellant.

Michael T. Judge, Assistant Attorney General (Mary Sue Terry, Attorney General; David A. Rosenberg, Assistant Attorney General, on brief), for appellee.

## ON REHEARING EN BANC

OPINION

**BAKER, J.**—A rehearing *en banc* was granted in this appeal from a decision of a panel in which there was a dissent.

William Edward Brown (appellant) appealed from his bench trial convictions by the Circuit Court of Westmoreland County for possession of cocaine with the intent to distribute and for possession of drug paraphernalia. In his petition for appeal, he argued that: (1) probable cause did not exist for the warrantless search of the automobile he used; and (2) he did not knowingly and intentionally possess cocaine with the intent to distribute or possess drug paraphernalia. He was granted an appeal based on those issues and a divided panel of three members of this Court reversed his conviction, holding that the evidence failed to prove that he knowingly possessed the cocaine and drug paraphernalia.[1] The majority did not decide the warrantless search issue. The Commonwealth's petition for a rehearing *en banc* was granted upon the same issues presented in appellant's original petition and brief before the panel.

In his brief filed in response to the Commonwealth's *en banc* brief, appellant raises the identical issues contained in his petition for appeal. He also argues in his brief that a rehearing *en banc*, granted at the request of the Commonwealth, constitutes an appeal by the Commonwealth prohibited by the Virginia Constitution. Finding no error, we affirm the judgment of the trial court.

█ On appeal, whether on the initial appeal or on rehearing from that initial appeal, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "The inferences to be drawn from [the] proved facts are within the province of the [trial] court trying the case without a jury, so long as the inferences are reasonable and justified." *Webb v. Commonwealth*, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). When the matter is heard by the trial judge sitting without a jury, "the judgment . . . is entitled to the same weight as a jury verdict and will not be disturbed [on appeal] unless plainly wrong or without evidence to support it." *Evans v. Commonwealth*, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975); Code § 8.01-680.

The investigation out of which appellant's arrest was made resulted from an ongoing effort on the part of state and county police officers to detect and prosecute persons involved in illegal drug activities at a place known as Burton's Disco located in Westmoreland County. As a result of information concerning those activities, supplied to the police

---

[1] The decision of the panel is unpublished (Record No. 0627-89-2, August 13, 1991).

by a reliable informant, state and county officers, over a period of several months, made arrests at Burton's of persons engaged in the illegal sale of drugs.

Immediately prior to appellant's arrest on October 27, 1988, the informant supplied the officers with further information concerning continued illegal drug activity at Burton's. Because the informant's information had proved reliable in the past, on the night of October 27, 1988, Virginia State Police Special Agent Baines and several Westmoreland County Sheriff's deputies assembled in Warsaw for the purpose of making controlled purchases and a raid at Burton's. The informant advised them that three "target vehicles" would be on Burton's parking lot and described them as a red pickup truck, a red and white Nova and a brown Pinto.

Before the police raiding party moved to Burton's, the informant agreed to participate in attempts to make controlled purchases of drugs. He was wired with a body transmitter and assigned to work with an undercover agent. The police proceeded to Burton's parking lot and made several arrests. The raiding party brought with them Officer Vernon Jones, an experienced dog handler, and a narcotics dog trained to "sniff out" drugs such as cocaine, heroin and marijuana.

Westmoreland County Chief Deputy Sheriff Larry Thrift was the first officer to confront appellant. Thrift referred to the action being taken as a drug raid. Prior to confronting appellant, Thrift was concentrating more on people than on vehicles. He had heard appellant's name mentioned over a state police radio, and apparently knew appellant by the nickname "Sonny." Thrift went to the location of the Pinto and saw appellant walking toward that vehicle from the direction of Burton's. Thrift knew that a number of people had been arrested that night in the raid and that "appellant was one of the ones that could be implicated." The brown Pinto was parked about thirty feet from where Thrift first sighted appellant walking toward it. The driver's door was open and the motor was running. Appellant asked Thrift if he could enter the Pinto and turn off the motor. Thrift told him that he would prefer that appellant wait for the investigating officer, apparently meaning Special Agent Baines.

When Officer Sydnor arrived at the Pinto, Thrift told him what had transpired to that point. Sydnor passed information to Baines that appellant wanted to go "to his car," meaning the Pinto.

Baines had a receiver that enabled him to hear part of a conversation taking place between the informant and an undercover agent. Baines heard the informant say, "Be sure to check on the brown Pinto." Baines knew this to be one of the "target vehicles" and he then "centered" on that car. When Baines reached the Pinto, he advised appellant of the purpose of the police investigation and asked permission to search the Pinto. When permission was not given, he called for Officer Jones and the trained canine.

Jones testified that normally the dog handler and the dog circle the item to be searched and then the dog moves to the location of the drugs, if any are present. In this case, the dog and its handler started at the front of the vehicle but when the dog arrived at the open door it leaped inside and alerted on a section under the driver's seat. The dog was removed from the car, rewarded with praise and released to inquire further. The dog then alerted on a change purse on the dashboard. Baines then entered the car and discovered drug paraphernalia and drugs under the driver's seat where the dog had first alerted. Baines then looked inside the change purse and found sixteen grams of cocaine. He also found a black zippered bag on the back floorboard which contained fourteen plastic bags with cocaine residue. Baines arrested appellant, searched him and found a total of $1,070.69 cash located in three different places on appellant's person.

Appellant stated he had been at the lot approximately one hour before the police arrived, and that he had driven the Pinto to the lot with a couple of friends whom he refused to name. Appellant further stated that the Pinto belonged to his "old lady" with whom he was living. Appellant also stated that "the dope ain't mine," that no one else had driven the car that night, and that he could not explain the presence of the items in the car. He acknowledged that he had used cocaine "once" but that had been "a while" ago and that he knew the appearance of cocaine.

## I. *Search of the Automobile*[2]

■ The Fourth Amendment "protects people from unreasonable government intrusions [of] their legitimate expectations of privacy."

---

[2] The dissent argues that appellant was unlawfully seized prior to the trained canine's search. The issue was not presented to the trial court, was not granted as an issue to be considered by a panel, and was not argued to this Court sitting *en banc*. Based on Rule 5A:18, the issue cannot and should not be addressed by us.

*United States v. Chadwick*, 433 U.S. 1, 7 (1977). A reasonable expectation of privacy did not extend to the airspace surrounding appellant's vehicle, and reasonable and articulable suspicion is not required before the police may use a canine trained in drug detection to sniff the air about an enclosure believed to contain drugs. *See United States v. Lovell*, 849 F.2d 910, 913 (5th Cir. 1988). Nothing in the Fourth Amendment prohibits a law enforcement officer from using trained canines to augment the sensory faculties bestowed on the officer at birth. *United States v. Lewis*, 708 F.2d 1078, 1080 (6th Cir. 1983) (citations omitted). In *Lewis*, the Court rejected Lewis' contention that probable cause must be shown and a warrant procured as a condition precedent to trained canine sniffing:

> The odor emanating from even a closed object is accessible to the public foreclosing an expectation of privacy even though the owner has taken steps to shield his property within the closed container from perception by other senses, such as sight.

*Id.* In *People v. Mayberry*, 31 Cal. 3d 335, 342, 644 P.2d 810, 814, 182 Cal. Rptr. 617, 621 (1982), the California Supreme Court observed:

> In our view, the escaping smell of contraband from luggage may be likened to the emanation of a fluid leaking from a container. The odor is detectable by the nose, as the leak is visible to the eye. We discern no constitutionally significant difference in the manner of escape, and conclude that any privacy right is lost when either escapes into the surrounding area.

In *Mayberry*, the police had no specific information concerning the defendant when the dog sniffed her luggage which was in the baggage area. *See also People v. Dunn*, 155 A.D.2d 75, 553 N.Y.S.2d 257 (1990), *cert. denied*, 501 U.S. 1219 (1991) (holding that a narcotics dog's sniff of drugs in the hallway outside defendant's apartment did not constitute a search within the meaning of the Fourth Amendment). The New York Court quoted with approval the following from *Katz v. United States*, 389 U.S. 347, 351 (1967):

> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.

*Dunn*, 155 A.D.2d at 87, 553 N.Y.S.2d at 264. It is the detection of the drugs by the trained canine that supplies the probable cause, not the search that followed that detection. *See United States v. Robinson*, 707

F.2d 811, 815 (4th Cir. 1983); *United States v. Sullivan*, 625 F.2d 9, 13 (4th Cir. 1980), *cert. denied*, 450 U.S. 923 (1981).

In *United States v. Goldstein*, 635 F.2d 356 (5th Cir.), *cert. denied*, 452 U.S. 962 (1981), the Court held that a narcotics dog's sniff is not the equivalent of an investigatory stop because the use of the dog for that purpose is neither a search nor seizure under the Fourth Amendment and, therefore, reasonable and articulable suspicion is not required as a condition precedent to police use of a canine trained in drug detection.

Thus, it is clear that when the search of the Pinto actually was made, the action of the narcotics dog gave the police probable cause to make the search. The police had a legitimate right to be on the parking lot where they were when the discovery was made.

■ The trial court denied appellant's motion to suppress, casting the burden on appellant to show, considering the evidence in the light most favorable to the Commonwealth, that the denial constituted reversible error. *See Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied*, 449 U.S. 1017 (1980). Appellant has not met that burden.

## II. *Sufficiency of the Evidence*

In support of his assertion that the evidence was not sufficient to support his convictions, appellant cites three Virginia appellate court decisions. The first of these, *Castaneda v. Commonwealth*, 7 Va. App. 574, 376 S.E.2d 82 (1989), was affirmed by this Court sitting *en banc*. Castaneda claimed that the evidence failed to prove that he "knowingly and intentionally possessed cocaine with the intent to distribute." The record disclosed that Castaneda was driving a rented vehicle on Interstate 95 and, when questioned, consented to a search of the vehicle. A fellow passenger, Castro, had sole possession of the vehicle before Castaneda entered it. A narcotics dog sniffed the area where the drug was found in a package hidden in the back seat. Castaneda had no money on his person and his fingerprints were not found on the package. Although the facts in *Castaneda* substantially differ from those in the case before us, principles useful in making our determination are stated there:

> Possession may be actual or constructive. Constructive possession exists when "an accused has dominion or control over the drugs." Such "possession may be proved by 'evidence of acts,

declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of narcotics at the place where they were found.'"

The possession of drugs need not always be exclusive. It may be shared with another.

In determining whether a defendant constructively possessed drugs, defendant's proximity to the drugs and his occupancy of the vehicle must be considered. . . . [B]oth are factors which may be considered in determining whether a defendant possessed drugs.

\* \* \*

When the proof of intent to distribute narcotics rests upon circumstantial evidence, the quantity which the defendant possesses may indicate the purpose for which it is possessed. Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute.

*Castaneda*, 7 Va. App. at 583-84, 376 S.E.2d at 86-87 (citations omitted).

The second case cited by appellant to support his assertion that the Commonwealth's evidence is insufficient to prove he knowingly possessed cocaine with the intent to distribute is *Drew v. Commonwealth*, 230 Va. 471, 338 S.E.2d 844 (1986). In *Drew*, the police had observed twenty-two persons enter or leave a Knox Street dwelling within a period of one hour. Although they had observed Drew in the street near the Knox Street house, the record did not disclose that they had seen Drew inside at any time. Upon procuring and executing a search warrant, they discovered substantial drugs inside the house. They also found papers in the house that contained Drew's name and the Knox Street address. Because twenty-two people were shown to have gone in and out of the house while Drew was not there, the evidence did not prove beyond a reasonable doubt that Drew knew the drugs were there or that he had exercised actual or constructive possession of them.

The last case cited in support of appellant's assertion is *Hairston v. Commonwealth*, 5 Va. App. 183, 360 S.E.2d 893 (1987). Hairston was shown to be holding a baby in whose sleeping garments narcotics were found. No other evidence established that Hairston knew drugs

were present on the baby. Only proximity to the drugs was shown. That case is distinguishable from the one before us.

■ While proximity to a controlled substance is insufficient alone to establish possession, it is a factor to consider when determining whether the accused constructively possessed drugs. *Lane v. Commonwealth*, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982).

Here, appellant drove the Pinto containing the drugs to Burton's parking lot, an area known to the police as a place where drugs were distributed. He had arrived at the lot one hour before the police. He left the Pinto motor running and the driver's door open. He went in the direction of the disco and returned when the police stopped at the car. Although the Pinto was registered in the name of a lady with whom appellant was living, it was in his custody and under his dominion and control. While he stated that he had driven two others to the disco, he refused to provide the police their names. When first sighted by one of the officers, appellant was coming toward the Pinto from the disco area where other drug related arrests had been made that night. In the Pinto, which the informant had designated as a ''target vehicle,'' under the driver's seat the police found two scales of the kind used to measure quantities of drugs for sale, a plastic vial, a plastic cup and a black bag containing nineteen plastic bags with cocaine residue. Fourteen plastic bags with cocaine residue were also found in a black zippered case on the back floorboard. In addition, on the dashboard in plain view, the police found a change purse containing a 16.94-gram ''chunk'' of cocaine with a street value between $1,600 and $1,700. Upon being searched incident to his arrest, appellant gave no explanation for having $1,070.69 cash ''stuffed'' in his pockets and wallet.

■ An unusual amount of cash found under the described circumstances may be considered along with the other evidence to support a finding that a person is engaged in the business of distributing drugs. *See United States v. Smith*, 595 F.2d 1176, 1181 (9th Cir. 1979). Although ownership or possession of the premises or vehicle where drugs are does not create a presumption of knowing possession of drugs found on the premises or in the vehicle, Code § 18.2-250, nevertheless, the finder of fact may infer from the value of drugs found on premises owned or occupied by an individual that it is unlikely anyone who is a transient would leave a thing of great value in a place not under his dominion and control. *See United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir.), *cert. denied*, 475 U.S. 1128 (1986). Moreover,

considering the totality of the evidence, particularly the fact that appellant had a large sum of cash found "stuffed down" his pockets, the trial court reasonably could have concluded that appellant had consummated drug sales at or between the disco and the Pinto, and intended to make a hasty departure in the Pinto, left with its motor running and the driver's door open. *See Colbert v. Commonwealth*, 219 Va. 1, 4, 244 S.E.2d 748, 749 (1978).

As is frequently the situation, the evidence relating to appellant's knowledge and intention to possess the drug is circumstantial. The inferences drawn by the trial court are reasonable and justified. The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs and paraphernalia in the Pinto. However, there was no evidence presented to suggest that those were the facts. These are theories appellant urges us to accept as reasonable hypotheses of his innocence. Such theories of how the drugs possibly could have gotten into the Pinto, which was under appellant's dominion and control, if given credence, could have defeated the inference that appellant knowingly possessed the contraband. However, even if appellant's pretrial statement to the police was not inherently incredible, the trial court was not required to believe it. *See Montgomery v. Commonwealth*, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980). We find the evidence sufficient to support the judgment of the trial court.

### III. *The Right of the Commonwealth to Request a Rehearing En Banc*

■ Appellant concedes that the Commonwealth is an aggrieved party within the provisions of Code § 17-116.02(D). He argues that Code § 17-116.02(D) cannot override the provisions of Article VI, Section 1, of the Virginia Constitution, which restricts the Commonwealth's right to appeal to cases involving the life or liberty of any person, except in cases relating to the State revenue or dismissal of criminal charges on certain constitutional grounds. We disagree. A petition for rehearing in the same appellate court does not constitute an appeal prohibited by Article VI, Section 1, of the Virginia Constitution. *See Virginia Dep't of Corrections v. Crowley*, 227 Va. 254, 262, 316 S.E.2d 439, 443 (1984).

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Coleman, J., Duff, J., Moon, J., Willis, J. and Bray, J., concurred.

Elder, J., dissenting.

I respectfully dissent. I would find that appellant in his petition, briefs and arguments before the trial court and this Court regarding the issue of whether there was probable cause for the warrantless search of the automobile implicitly raised the issue of whether his initial detention and the detention of the Pinto were constitutionally permissible.

Officer Larry Thrift was the first police officer to encounter Brown. Pulling his car to a stop in front of the brown Pinto, Thrift watched as Brown walked from the disco toward the Pinto. Brown continued to approach and, during an ensuing conversation with Thrift, revealed that the Pinto was in his custody. Brown asked for permission to turn off the car engine, but Thrift instructed him to remain where he was and await investigators.

When a second officer, Roy Sydnor, arrived to investigate, Thrift advised him that he had just detained Brown. Sydnor in turn informed Rufus Baines, a third officer, of Brown's presence. At trial, Officer Baines described his initial encounter with Brown.

> I went to Mr. Brown and said that I had information that drugs were being dealt there, and that we were going to search for any evidence. At that time he said, do you have a search warrant? And I said, no, I don't need one. I asked him to come over close to the Pinto where we could watch him, and that at that point I called for Special Investigator Jones to come with the State Police narcotics dog.

Brown's detention was plainly a "seizure."

> It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime—"arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

*Terry v. Ohio*, 392 U.S. 1, 16 (1968). It is well settled that, even when no formal arrest is involved, a seizure of a person "must be supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 696 (1981). Likewise, it is quite plain that the officers seized the Pinto when they

informed Brown that they were going to search the car. *See United States v. Place*, 462 U.S. 696 (1983). A temporary detention of an individual's personal effects is permissible based upon "specific articulable facts [warranting a reasonable belief] that the [effects] contain contraband or evidence of a crime." *Id.* at 706.

According to the testimony of Officer Baines, the police had already decided to conduct a search of the car at the time Brown was stopped. However, at that time, the only information they had concerning Brown or the car was the informant's instruction to "check the brown Pinto." " '[S]uspicion, or even strong reason to suspect' is not an adequate substitute for probable cause to justify the entry and search." *Derr v. Commonwealth*, 6 Va. App. 215, 221, 368 S.E.2d 916, 919 (1988) (quoting *Henry v. United States*, 361 U.S. 98, 101 (1959)). " '[T]he probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate' " *Derr*, 6 Va. App. at 220, 368 S.E.2d at 918 (quoting *United States v. Ross*, 456 U.S. 798, 808 (1982)). Here, relying only on an informant's instruction to "check" a particular car, the police had, at best, a suspicion of criminal activity relative to that car.

A narrow exception to the general rule requiring probable cause for a seizure of people or effects allows police to make "limited intrusions on an individual's personal security based on less than probable cause." *Summers*, 452 U.S. at 698. Such intrusions must be warranted by "substantial law enforcement interests" and must be supported by "an articulable basis for suspecting criminal activity." *Id.* at 699.

The case before us is unlike *Terry* or *Adams v. Williams*, 407 U.S. 143 (1972), where officers acted on a reasonable belief that the suspects they confronted were armed and potentially dangerous. Here, police faced no such concern. Moreover, in our review of the record, we have found no "articulable basis for suspecting criminal activity" to support a detention of Brown and a seizure of the Pinto. The sole possible basis for the detention and seizure was the suggestion by the informant "to check the brown Pinto," coupled with Brown's acknowledgement that the Pinto was in his possession. Because police did not at the time know what information prompted the informant to transmit this cryptic message back to them, it cannot serve as an articulable basis of suspicion of criminal activity.

The facts before us are also distinguishable from those in *Williams v. Commonwealth*, 4 Va. App. 53, 354 S.E.2d 79 (1987), and *Allen v.*

*Commonwealth*, 3 Va. App. 657, 353 S.E.2d 162 (1987). In *Williams*, this Court held that officers who detained the defendant had "sufficient articulable facts" to support the suspicion that the defendant was engaged in criminal activity. 4 Va. App. at 65, 354 S.E.2d at 85. However, those articulable facts were, as required by the Virginia Supreme Court in *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982), "particularized and objective." In *Williams*, police had been informed that the defendant possessed contraband and was engaged in the distribution of that contraband. They had a search warrant for the residence supported by probable cause to believe that the defendant was carrying on his illegal activities in the residence from which he had just departed. They also knew that the defendant had a history of drug-related offenses. 4 Va. App. at 65, 354 S.E.2d at 86. The facts in *Williams* stand in stark contrast to the facts of this case — a lone informant's vague admonition that police "check" an automobile. As long as the police remained uninformed about the basis for their informant's remark, they had no articulable basis to support their actions.

In *Allen*, this Court approved the detention of an individual seen driving away from premises as police arrived to execute a search warrant. 3 Va. App. at 661, 353 S.E.2d at 165. In so holding, this Court relied on *Michigan v. Summers*, 452 U.S. 692 (1981), in which the United States Supreme Court held that the existence of a search warrant provided objective justification for the detention of a defendant who was leaving his house just as police arrived to execute a search warrant on that house. In both *Allen* and *Summers*, the detention was based on a finding of probable cause for the issuance of a search warrant.

> Of prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband. A neutral and detached magistrate had found probable cause to believe that the law was being violated in that house and had authorized a substantial invasion of the privacy of the persons who resided there. The detention of one of the residents while the premises were searched, although admittedly a significant restraint on his liberty, was surely less intrusive than the search itself.

*Summers*, 452 U.S. at 701 (footnote omitted).

Absent from the facts before us is any suggestion that, at the time Brown was detained and the Pinto seized, probable cause existed for a search of the Pinto. Whether probable cause later arose is, on these facts, irrelevant to the question whether it existed at the time of the initial detention of Brown and the Pinto.

With neither probable cause nor an articulable basis to believe that the Pinto contained evidence of crime, the police had no basis for detaining Brown or seizing the Pinto pending the arrival of the dog. Since the Pinto was illegally seized prior to the arrival of the dog, all evidence derived directly or indirectly from that search must be suppressed. *See Derr*, 6 Va. App. at 223, 368 S.E.2d at 920-21.

I would reverse and remand.

Benton, J., with whom Koontz, C.J., and Barrow, J., join, dissenting.

I concur with the views expressed in Judge Elder's dissenting opinion that the initial detentions of William E. Brown and the automobile were constitutionally impermissible. However, I would reverse the conviction and dismiss the case because the evidence was insufficient to support the conviction.

"In order to convict a defendant of 'possession' of a narcotic drug . . . it generally is necessary to show that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it." *Ritter v. Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 805 (1970). Proof that illegal drugs were discovered in an automobile that was subject to Brown's dominion and control is insufficient standing alone to support a conviction under Code § 18.2-250. The prosecution was required to prove beyond a reasonable doubt that Brown knew of the presence and nature of the illegal substances. *Glenn v. Commonwealth*, 10 Va. App. 150, 154, 390 S.E.2d 505, 507 (1990).

As noted in *Behrens v. Commonwealth*, 3 Va. App. 131, 348 S.E.2d 430 (1986), "[s]uspicious circumstances, including proximity to a controlled drug, are insufficient to support a conviction" for their possession. To convict a defendant of possession of an illegal narcotic drug, the Commonwealth must show that the defendant "was aware of the presence and character of the drug and was intentionally and consciously in possession of it."

*Id.* (citations omitted).

Although the automobile was subject to Brown's dominion and control by virtue of Brown's admission that he drove it to the discotheque, no evidence exists upon which the fact finder could have reasonably found that Brown was aware of the presence or nature of the illegal drug and paraphernalia discovered in the automobile. Brown did not own the automobile; he borrowed it from Theresa Johnson. The drugs and paraphernalia were not in plain view. The cocaine was enclosed in a purse. Scales and other paraphernalia were contained in a black vinyl bag under the driver's seat. A closed file case lying on the rear floorboard contained plastic baggies with cocaine residue.

Although "[k]nowledge of the presence and character of the controlled substance . . . may be shown by evidence of the acts, statements or conduct of the accused," *id.*, this record contains no such indicia of knowledge. Brown denied knowledge of the contraband, and he testified that several other persons rode in the automobile with him to the discotheque. When the police arrived, Brown did not attempt to flee, but acknowledged that he was the operator of the automobile. Brown made no statements from which it can be concluded that he was aware of the items in the automobile. "[W]here . . . the element of knowledge [is] based on circumstantial evidence, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.' " *Hairston v. Commonwealth*, 5 Va. App. 183, 186, 360 S.E.2d 893, 895 (1987) (quoting *Garland v. Commonwealth*, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983)).

Failing to prove that Brown had exclusive access to the automobile and failing to account for all those who may have had access to the location where the drugs were found, the Commonwealth cannot rely on an inference from these circumstances that Brown knew of the presence of the drugs. *See Best v. Commonwealth*, 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981) (per curiam). Indeed, the legislature has decreed that "occupancy of . . . [a] vehicle . . . in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance." Code § 18.2-250. The guilt of an accused may not be inferred merely because the circumstances are consistent with guilt. *See Fogg v. Commonwealth*, 216 Va. 394, 395, 219 S.E.2d 672, 673 (1975) (per curiam). Guilt is established beyond a reasonable doubt only when the circumstances are "inconsistent with innocence and exclude every

reasonable hypothesis of innocence.'' *Wells v. Commonwealth*, 2 Va. App. 549, 551, 347 S.E.2d 139, 140 (1986). ''[C]ircumstances of suspicion, no matter how grave or strong, are not proof . . . sufficient to support a verdict of guilty.'' *Crisman v. Commonwealth*, 197 Va. 17, 21, 87 S.E.2d 796, 799 (1955); *see also Stover v. Commonwealth*, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981).

For these reasons, I would reverse the conviction and dismiss the prosecution.