Stewart F. Hancock. Jr., J.
On February 19, 1974 defendant was arrested without a warrant for unlawful possession of a controlled substance at Syracuse’s Hancock International Airport. He had just arrived on American Airlines flight 592 from Chicago where he changed planes on his way from San Diego, California to Syracuse. As he was loading two marked bags thought to contain marijuana into a car outside of the terminal Syracuse police placed him under arrest. A search following the arrest revealed that the bags contained marijuana and amphetamines and has led to defendant’s indictment for various violations of the drug law.
On this motion to suppress the evidence thus found, defendant contends that the search was invalid since the police lacked probable cause to arrest him. Defendant also urges that, even assuming the presence of probable cause and that the arrest was otherwise valid, it was tainted and rendered void by illegal police conduct in San Diego. Finally, he argues that the search was illegal because the Syracuse police had sufficient time to apply for a warrant and did not do so.
To examine the issues involved, a brief recitation of the chain of events leading to the defendant’s arrest is necessary. On February 19, 1974 at approximately 11:25 a.m. Syracuse time, Sergeant Boylan of the Narcotics Section of the Syracuse Police Department received a telephone call from Sergeant Corey of the Narcotics Unit of the San Diego police. The substance of the information that Sergeant Boylan obtained from Sergeant Corey follows:
Corey had been called by two identified officers (W. L. Shubert and J. F. Romani) of the San Diego Harbor Patrol who were assigned to the San Diego Airport. Harbor Patrolmen Shubert and Romani advised him that they had examined by X ray two bags at the request of an airlines baggage handler. The baggageman had become "suspicious” because of the "extreme weight” of the bags since there had recently been some "bomb scares and threats” at the airport. Under the X-ray machine Patrolmen Shubert and Romani observed in the bags the outlines of 36 square or brick-shaped objects *108 which, they, based on their experience in such matters, believed to be "kilos” of marijuana. (It appears that Sergeant Boylan from his own experience in the Narcotics Section of the Organized Crime Division knew that a "kilo” of marijuana was a quantity of marijuana weighing approximately 2.2 pounds, usually in brick form, 5 inches wide, 9 inches long and 2Vi inches to 3 inches thick.) Also, the harbor patrolmen had noticed a strong smell of talcum powder, a substance that they and Sergeant Corey knew was commonly used for the purpose of avoiding detection by dogs trained to locate marijuana by smell. The two bags were described precisely — both American Tourister, one blue and one yellowish gold, weighing approximately 70 pounds and 50 pounds. Baggage ticket numbers were given. Furthermore, the harbor patrolmen had marked the bottom of each bag with their initials "WLS” and "JFR”. The man believed to be the owner of the bags, identified as one "Danko”, together with the bags, Sergeant Corey reported, was scheduled to arrive in Syracuse on American Airlines flight 592 at 5:25 p.m. after changing planes in Chicago.
After receipt of this information Sergeant Boylan at about 1:00 p.m. local time telephoned the San Diego Police Department to check the authenticity of the phone call and to verify the source of the information as Sergeant Corey of the San Diego Narcotics Unit. Also, at about 3:55 p.m. the Syracuse police obtained a detailed physical and clothing description of "Danko” through American Airlines personnel when the suspect changed planes in Chicago and a confirmation of the fact that he had boarded flight 592 for Syracuse. At approximately 5:25 p.m. the defendant, answering the description of the suspect "Danko”, arrived on American Airlines flight 592 along with the two American Tourister bags — one blue and one yellowish gold, each bearing the initials "WLS” and "JFR”. After picking up the bags which he carried out to the parking lot and was in the process of loading into a car, defendant was arrested.
I.
We examine first the question of probable cause for the arrest at Hancock Airport in Syracuse.
There can be little question concerning the reasonableness of the conclusion by Syracuse police that the defendant was the suspect "Danko” and that the bags he picked up were, in *109 fact, the ones suspected of containing marijuana. When they observed a man answering Danko’s description get off American Airlines flight 592 and pick up the two American Tourister bags with the initials "WLS” and "JFR”, the identity of both the man and the bags was established to a virtual certainty. But the question remains — assuming the authenticity and the accuracy of the information received from San Diego and that the identification of the defendant and the bags was properly established — whether the Syracuse police had probable cause to believe that the bags contained marijuana.[1] An analysis of the record shows that Sergeant Boylan’s belief was based on: (1) the X-ray finding by the harbor patrolmen of 36 square or brick-shaped objects; (2) the detection by the harbor patrolmen of the strong smell of talcum powder; (3) the opinion of the harbor patrolmen — based on their knowledge of the appearance of kilos of marijuana and that talcum powder was commonly used to disguise the odor of marijuana in order to fool trained dogs — that the bags contained marijuana; (4) the confirming opinion of Sergeant Corey of the San Diego Narcotics Unit, based on his experience, as to the frequent use of talcum powder in the marijuana trade for avoiding detection by dogs. (5) The personal knowledge of Sergeant Boylan of the Syracuse Narcotics Unit, based on his experience, that kilo units of marijuana were commonly found in brick-shaped packages.
No case in point has been noted. However, in Fumagalli v United States (429 F2d 1011) the sight of a brick-shaped package and the detection of the odor of marijuana was found sufficient to justify a search. Later decisions in the Ninth and Tenth Federal Circuits hold that the smell of marijuana, without more, is enough to establish probable cause. (United States v Bowman, 487 F2d 1229; United States v Blair, 366 F Supp 1036, 1040; United States v Barron, 472 F2d 1215, cert den 413 US 920; United States v Leazer 460 F2d 982.) A California appellate court has recently decided that the reaction of a dog trained to sniff marijuana was sufficient corroboration of a tip that baggage "might possibly” contain marijuana to furnish probable cause for a search. (People v Fur- *110 man, 30 Cal App 3d 454.) In Hernandez v United States (353 F2d 624, 626, cert den 384 US 1008), the fact that an unidentified airline passenger met the pattern established for a marijuana trafficker was held to be a sufficient basis for searching his bags for marijuana.[2] Finally, the Court of Appeals in a dictum in People v Reisman (29 NY2d 278, 284), has stated that the telltale odor of marijuana coming from a carton at an airport would, alone, be sufficient for the arrest of the owner.
Prior to the arrest here, the police had the opinion of experienced patrolmen that the appearance of the brick-shaped objects on X-ray examination and the odor of talcum powder coming from the bags showed that the bags contained marijuana. The significance of the talcum powder was confirmed by Sergeant Corey from his own experience with the narcotics unit; and Sergeant Boylan knew from his experience that the description of the brick-shaped objects seen on X ray was consistent with the appearance of marijuana kilos. As stated by the Supreme Court "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment” Hill v California, 401 US 797, 804). Applying the test in Hill and following the analogous cases cited where smell of marijuana has been held sufficient — this court concludes that personal observations on X ray by experienced police personnel of distinctively shaped kilo packages plus the detection of the odor of talcum powder should give rise to "a sufficient probability” that the bags contained marijuana.
There was, in this court’s opinion, probable cause for the warrantless arrest of the defendant for unlawful possession of drugs. Therefore, the search incident to the arrest was legal. (See People v Santiago, 13 NY2d 326, 331; People v Reisman, 29 NY2d 278.)
II.
The second question presented is whether the X-ray viewing *111 of the defendant’s bags upon which the validity of the subsequent arrest must necessarily depend was, itself, an unwarranted and unlawful intrusion. Under the reported decisions the action appears legally justified upon two grounds:
1. The harbor patrolmen who X-rayed the bags did so — not on their own initiative — but at the specific request of the airline baggageman who, in the light of recent bomb scares, had become suspicious because of their excessive weight. It is clear that the airline employee’s motivation in enlisting the aid of the patrolmen was his concern for passenger safety; and that the purpose of the inspection was entirely unrelated to any effort to find drugs. Under these circumstances, it could be claimed on the authority of Burdeau v McDowell (256 US 465) that the search was private and not subject to Fourth Amendment restrictions. (See United States v Berger, 355 F Supp 919; United States v Averell, 296 F Supp 1004, 1010; United States v Ogden, 485 F2d 536; United States v Cangiano, 464 F2d 320; Gold v United States 378 F2d 588, 590, 591.)
2. Even if the X-ray inspection were held to be so infused with governmental interest as to constitute a governmental search as in Corngold v United States (367 F2d 1, 5, 6) it was, in this court’s view, only a limited invasion of defendant’s rights which was more than warranted by the nature of the harm sought to be prevented — a possible bomb explosion on an aircraft.[3] In People v Kuhn (33 NY2d 203, 209, 210) the Court of Appeals in upholding the reasonableness of the magnetometer search of passengers stated: "In determining the reasonableness of the intrusion, it should be tested by 'balancing the need to search against the invasion which the search entails.’ (Camara v Municipal Ct., 387 US 523, 537.) The nature of the harm sought to be prevented includes air piracy and the severe consequences which aircraft hijackings produce. In order to prevent the possibility of a hijack attempt, immediate 'on the spot’ protective action by airport officials is required.” (See, also, People v Taggart, 20 NY2d 335.)
This court holds that the action of the police officials in San Diego did not vitiate the otherwise lawful arrest of the defendant in Syracuse.
III.
In view of this court’s holding that defendant’s arrest in *112 Syracuse was lawful, the final contention that the failure of the police to obtain a warrant invalidates the search is without merit. No warrant was necessary since the police had reasonable grounds to believe the defendant was committing the crime of unlawful possession of marijuana in their presence. (CPL 140.10; People v Reisman, 29 NY2d 278, 284, supra.)[4]
This court concludes, then, that search of defendant’s bags was lawful. The motion to suppress is denied.

. This necessarily entails an inquiry into whether Sergeant Corey or the harbor patrolmen in San Diego had probable cause for an arrest or search. Except for the independent confirming opinion of Sergeant Boylan as to the appearance of marijuana kilos, the basis for the search or arrest in Syracuse and San Diego is identical. Thus, if the San Diego police lacked probable cause, the Syracuse police did also. (See People v Lypka, 36 NY2d 210.)

. In Hernandez (supra), the characteristics of defendant tying him to the pattern were his national origin (Latin American), that his bags were unusually heavy and of an expensive type of a certain brand, and that he paid for his first class ticket in cash with bills of large denomination without a prior reservation. (See, also, United States v Blum, 329 F2d 49, 52, cert den 377 US 993, where electronic detection of illegal contents of package gave sufficient cause for search.)
Our own Appellate Division, Fourth Department, has held that what appeared to be bloodstains on an automobile dashboard, together with knowledge that a murder had been committed and that defendant had been in the area, was enough cause for a warrantless search of the car unrelated to any arrest. (People v La Belle, 37 AD2d 135.)

. Terry v Ohio (392 US 1); United States v Lopez (328 F Supp 1077, 1093, 1094).

. Indeed, it could be argued that since defendant was apprehended while loading the bags into an automobile, the circumstances were sufficiently exigent to support a warrantless search even without the arrest. (See People v Mule, 46 AD2d 414; see, also United States v Marti, 321 F Supp 59, 66 and Hernandez v United States, 353 F2d 624, 627, cert den 384 US 1008 [upholding warrantless airport searches].) People v Spinelli (35 NY2d 77) is distinguishable, since no exigent circumstances existed there.
Furthermore, it is problematical whether a search warrant could have been obtained by the Syracuse police prior to defendant’s actual arrival at the airport. Until the police confirmed the identity of the defendant and the luggage by their own personal observations, their sole basis for applying for a search warrant was the hearsay report from Sergeant Cotey in San Diego. (See United States v Marti, supra, p 66.)