THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESSIE DUNN, Appellant.

Fourth Department, March 16, 1990

APPEARANCES OF COUNSEL

*Burton Ritter* for appellant.

*Kevin M. Dillon, District Attorney (Raymond Herman* of counsel), for respondent.

## OPINION OF THE COURT

DENMAN, J. P.

The question presented on this appeal is whether police violated defendant's rights under the Constitution of the United States (US Const 4th Amend) or the Constitution of the State of New York (NY Const, art I, § 12) by conducting a warrantless "canine sniff" outside the door of his apartment. For the reasons that follow, we conclude that defendant's rights against unreasonable search and seizure were not violated.

Following his joint trial with codefendant Henry Hill, defendant was convicted of criminal possession of a controlled substance (cocaine) in the first and seventh degrees; criminal use of drug paraphernalia in the second degree (two counts); criminal possession of marihuana in the second degree (two counts); criminal possession of stolen property in the fourth degree; criminal possession of a weapon in the third degree; and unlawful possession of marihuana. The trial evidence included various items seized pursuant to two warrants authorizing the search of separate apartments leased by defendant. The first warrant was executed on May 12, 1988 at defendant's apartment in Hamburg, resulting in the seizure of large quantities of cocaine and marihuana, drug paraphernalia, two handguns, and $6,200 in cash found in the apartment, on defendant's person, and in his car. That seizure led to a second warrant, executed the next day, to search defendant's apartment in Cheektowaga. The second search resulted in the seizure of additional drugs and drug paraphernalia.

On appeal, defendant contends that the court erred in denying his motion to suppress without a hearing. Defendant also contends that the first warrant was improperly issued because it was based in part on the positive result of a warrantless "canine sniff" conducted in the common hallway outside defendant's Hamburg apartment, and because the balance of the information contained in that warrant application failed to establish probable cause to search the apartment. Although defendant's challenges are directed at the first warrant, if the first warrant fails, so must the second.

The relevant facts are gleaned from the affidavits of the investigating officer, New York State Police Investigator Joseph Gramaglia, and the dog handler, United States Customs Service Canine Enforcement Officer Leon Senecal, submitted in support of the first warrant application. Those affidavits reveal that the Magistrate had the following information before him when he issued the first warrant:

New York State Police Sergeant Kenneth Gellart resides in an apartment adjacent to defendant's Hamburg apartment. On numerous occasions Gellart observed defendant go to the apartment, stay a short time, and leave carrying a bag or briefcase, without ever staying overnight. Gellart never observed defendant move furniture into the apartment. On certain occasions when defendant was at the apartment, including one occasion 2½ weeks prior to the search, Gellart

smelled burning marihuana combined with the smell of incense emanating therefrom. Gellart generally observed defendant driving two vehicles, a 1985 Mercedes and a 1987 Chevrolet truck. Gellart also observed defendant's Mercedes at the apartment on the day before the search.

Jeffrey Osgood, the maintenance man at the apartment complex, entered defendant's apartment approximately 3½ months before the search. Osgood, who is familiar with marihuana and cocaine and their use, saw white powder and chunks of white rocks on a cutting board, on a rolling pin, on a triple beam scale, and on the floor of the apartment. Osgood tasted the powder and determined that it was cocaine. Osgood also saw plastic bags, marihuana roaches, and sticks of incense. He smelled the strong odor of marihuana emanating from a closed bedroom closet. Osgood observed that the apartment contained only a table, that defendant was seldom at the apartment, and that he always came and went carrying bags and packages.

Approximately three months prior to the search, Osgood again went to defendant's apartment. When defendant answered the door, Osgood observed that he appeared to be under the influence of cocaine and that he had a white powdery substance around one nostril. Osgood observed that a second man (evidently codefendant Hill) had been coming to the apartment in a Mustang.

Gramaglia had been assigned to the Narcotics Unit for four years and had conducted hundreds of investigations involving narcotics. He and fellow officers had investigated defendant's activities and had conducted surveillance of his apartment for four months. During that time, Gramaglia had acquired the aforementioned information from Gellart and Osgood. From a leasing agent, he learned that defendant had leased the Hamburg apartment since April 1987. He also learned that, on September 24, 1986, cocaine, marihuana and hashish had been seized from a car in which defendant was a passenger. Finally, he learned that defendant had been convicted in New Jersey of possessing 22 pounds of marihuana.

During surveillance of the apartment, police had observed defendant and the codefendant enter and leave on numerous occasions. Police determined the identity of codefendant Henry Hill by stopping his vehicle on March 7, 1988. They also ascertained that Hill resided at 57 Suffolk Street in Buffalo. On May 12, 1988, the day of the search, police

confirmed that defendant actually resided in an apartment in Cheektowaga. At approximately 12:30 P.M. on that date, police observed defendant carry a brown bag out of the Hamburg apartment and drive his Mercedes to the Cheektowaga apartment. At approximately 2:15 P.M., they observed Hill leave the Hamburg apartment.

Earlier that day, Gramaglia had requested the assistance of Officer Senecal and his dog Amber. Senecal had been a Canine Enforcement Officer for 14 years and was certified to utilize the dog, with whom he had worked since October 1987, in the detection of marihuana, cocaine, hashish, heroin and crack. The dog is certified and annually evaluated by the Canine Training Center and is trained to scratch when she detects controlled substances. The dog had correctly "alerted" on prior occasions, most recently on March 17, 1988, when she discovered a quantity of marihuana in the trunk of a vehicle.

At approximately 2:25 P.M. on May 12, Gramaglia, Senecal and Amber entered defendant's apartment building and proceeded to the hallway on the second floor where defendant's apartment was located.[1] Senecal had Amber "check out the doorway" of defendant's apartment. Amber headed directly to the door of defendant's apartment and, in Senecal's opinion, showed a "strong alert" by scratching the lower right corner of the door. Based on their prior information and the dog's alert, Gramaglia and Senecal opined that there were drugs on the premises, that defendant and codefendant were using the apartment to store, cut, and package cocaine and marihuana, and that they were using their vehicles to transport the drugs.

Based on the affidavits of Gramaglia and Senecal, the Magistrate issued a warrant to search defendant's person and apartment. Police immediately executed the warrant, with the results indicated *supra.* Defendant was arrested when he returned to the apartment while the police were executing the warrant.

Following indictment, defendant moved to suppress the tangible evidence. In support of that motion, defendant submitted his affidavit and that of his attorney, who averred that the warrant application was insufficient on its face to justify issuance of the warrant. Counsel also argued that the war-

---

1. The warrant application does not indicate how entry to the building was accomplished, but the trial evidence reveals that the building has an outer security door for which the officers obtained a passkey from Osgood, the maintenance man.

rantless "canine sniff of the atmosphere in or adjacent to living quarters constitutes an illegal search of a private enclosed area for which the defendant had a legitimate expectation of privacy". He argued that the dog's alert thus must be excised from the warrant application and that the remaining allegations were too stale and equivocal to establish probable cause. Defendant's motion papers did not request a suppression hearing.

The court denied defendant's motion. Without addressing whether the dog sniff constituted an illegal warrantless search, and assuming for the purpose of its discussion that the results of the dog sniff were improperly included in the warrant application, the court nevertheless concluded that the remaining information was sufficient to establish probable cause.

Shortly before trial, defendant's new counsel renewed the suppression motion, specifically requesting a hearing "as to the sources of information and evidence upon which the court granted and issued a search warrant". On the return date, defense counsel also argued for the first time that, at the time of the canine sniff, the police were unlawfully present in the common hallway outside the apartment. The court denied the request for a hearing, holding that there were no factual questions to be determined but only the legal question whether the written warrant application and affidavits set forth a sufficient basis for issuance of the warrant. Defendant's trial and conviction followed.

■ The first question for our consideration is whether defendant was entitled to a hearing on his motion to suppress. A suppression hearing is required only where the defendant has raised an issue of fact in his motion papers *(People v Glen, 30 NY2d 252, 256, 262, cert denied sub nom. Baker v New York, 409 US 849; People v Solimine, 18 NY2d 477, rearg denied 21 NY2d 1041)*. Although a challenge to the veracity of the affiant or to the validity of the information contained in the application presents a factual issue requiring a hearing *(People v Glen, supra, at 262; People v Alfinito, 16 NY2d 181, 184-186; see generally, Franks v Delaware, 438 US 154)*, a challenge to the facial sufficiency of a written warrant application presents an issue of law which does not require a hearing and which the court properly decides by reviewing the affidavits alone in order to determine whether they establish probable cause *(People v Glen, supra, at 256, 262; People v Solimine, supra, at 480)*.

Here, defendant's initial motion was directed exclusively to the sufficiency of the warrant application. He contended that the affidavits contained tainted information, i.e., the results of the dog sniff, and that the residue of information did not establish probable cause because it was stale and equivocal. In sum, defendant contended that the issuing Magistrate erroneously determined that the application satisfied the probable cause standard. That raised only an issue of law and it was thus proper for the suppression court to deny the motion without a hearing. Defendant's subsequent motion papers similarly raised no factual issues but merely reiterated his challenge to the facial sufficiency of the warrant application. On the return date, defense counsel orally made the additional contention that the dog sniff was illegal because police were unlawfully present in the common hallway of the apartment building. Determination of that second motion was within the discretion of the suppression court and, since no newly discovered facts were alleged, it was not an abuse of discretion to deny the motion (CPL 710.40 [4]; see, People v Glen, supra, at 262).

■ We thus turn to defendant's primary contention, that the warrant was improperly issued insofar as it was based on the result of the canine sniff outside defendant's apartment. Defendant makes two contentions in support of that claim: first, that at the time the canine sniff was conducted, the officers and the dog were unlawfully present in the common hallway of defendant's building; second, that the canine sniff itself constituted a warrantless search. Defendant's first contention is not preserved for our review. His initial challenge to the warrant made no reference to the presence of the police in the common hallway. Similarly, the papers submitted on defendant's second application failed to allege the illegality of the officers' presence in the building. Only in his oral remarks on the return date of the motion did defendant's counsel argue that the hallway was not a public place. If defendant had raised that contention in his original papers, a hearing would have been conducted and the People could have shown, as they later demonstrated at trial, that entry was effected with a passkey obtained from the maintenance man, who was cooperating with the investigation. It is also possible that the People could have shown that the investigators were permitted to enter the building by defendant's neighbor, Sergeant Gellart. Such proof would have established that the officers were lawfully in the building at the time the canine sniff was

conducted because they were permitted to be there by individuals with actual authority to consent to their presence *(People v Cosme,* 48 NY2d 286).

■ Defendant's second contention presents the more interesting and difficult issue. That issue is whether, given reasonable suspicion of criminality,[2] and assuming (as we must in this procedural posture) that police were lawfully present in the common hallway, the police violated the rights of the absent defendant by conducting a warrantless canine sniff outside his apartment for the purpose of detecting narcotics inside the apartment. Numerous Federal and State cases, including landmark decisions of the Supreme Court and the Court of Appeals, discuss the Fourth Amendment ramifications of nonrandom canine sniffs of various objects or places *(see, e.g., United States v Place,* 462 US 696; *People v Price,* 54 NY2d 557).[3] The *Price* decision also discusses the validity of a

---

**2.** ■ The issue whether police must have a certain quantum of suspicion before conducting a canine sniff of an unattended item or place is not directly raised in this case, although defendant's argument asserting a warrant requirement implies that a sniff must be supported by probable cause. We have been unable to find any case that holds that a dog sniff must be based upon probable cause; conversely, many cases hold that probable cause is not required *(see, e.g., United States v Place,* 462 US 696, 706-707; *United States v Colyer,* 878 F2d 469 [DC Cir]). Indeed, certain cases hold or suggest that police need not have any articulable suspicion before resorting to a canine sniff *(United States v Colyer, supra,* at 477; *United States v Lovell,* 849 F2d 910 [5th Cir]; *United States v Goldstein,* 635 F2d 356, 361 [5th Cir], *cert denied* 452 US 962). On the other hand, the majority of courts that have addressed the issue have held or assumed that the police must have articulable or reasonable suspicion *(United States v Place, supra; United States v Carrasquillo,* 877 F2d 73, 77-78 [DC Cir]; *United States v Quinn,* 815 F2d 153 [1st Cir]; *United States v Williams,* 726 F2d 661 [10th Cir], *cert denied* 467 US 1245). The former view is consistent with the conclusion that a canine sniff of an object or place is not a search at all; the latter view is consistent with the requirement that use of the dog not be indiscriminate. In most cases, the approach taken by the court can be understood by examining whether the sniff was conducted in defendant's presence or whether the object or place sniffed was seized, detained, or occupied, even temporarily, thus resulting in interference with defendant's possessory interest or with his freedom of movement *(compare, United States v Place, supra, and United States v Stone,* 866 F2d 359 [10th Cir], *with United States v Lovell, supra, and United States v Beale,* 736 F2d 1289 [9th Cir], *cert denied* 469 US 1072). In this case, it is sufficient to note that probable cause is not required. Beyond that, we decline to decide what quantum of suspicion is required for a canine sniff, and merely note that, based on their knowledge concerning defendant's drug activities, police had reasonable suspicion *(cf., United States v Stone, supra; United States v Williams, supra).*

**3.** To be distinguished is the situation, not before us, in which narcotics-

canine sniff under the New York Constitution *(People v Price, supra,* at 564). Almost invariably, the cases uphold warrantless canine sniffs as the basis for an arrest or for issuance of a search warrant, reasoning that use of narcotics-detecting dogs does not constitute a search within the meaning of the Fourth Amendment. The cases that have upheld canine sniffs against Fourth Amendment challenge generally fall into two categories—those in which dogs were used to sniff suspects' luggage or other items of personalty, and those in which dogs were used to sniff suspects' cars or train compartments *(United States v Place, supra,* at 706-707 [luggage at airport]; *United States v Wilhite,* 892 F2d 1044 [6th Cir] [car]; *United States v Colyer,* 878 F2d 469 [exterior of train sleeper compartment]; *United States v Martin,* 876 F2d 1008 [DC Cir] [luggage at train station]; *United States v Mayomi,* 873 F2d 1049, 1054-1055 [7th Cir] [mail at private mailbox service]; *Jennings v Joshua Ind. School Dist.,* 869 F2d 870, 873 [5th Cir] [car], *amended and superseded by* 877 F2d 313; *United States v Teslim,* 869 F2d 316, 323 [7th Cir] [car]; *United States v Massac,* 867 F2d 174, 176, n 1 [3d Cir] [luggage at train station]; *United States v Stone,* 866 F2d 359 [car]; *United States v Hardy,* 855 F2d 753, 758-759 [11th Cir], *cert denied —* US —, 109 S Ct 1137 [trunk of car]; *United States v Whitehead,* 849 F2d 849 [4th Cir], *cert denied —* US —, 109 S Ct 534 [luggage inside train compartment]; *United States v Rivera,* 825 F2d 152, 158 [7th Cir], *cert denied sub nom. Robles v United States,* 484 US 979 [luggage seized from hotel room]; *United States v Quinn,* 815 F2d 153 [trunk of car]; *United States v Attardi,* 796 F2d 257 [9th Cir] [luggage at airport]; *United States v Dicesare,* 765 F2d 890, 897 [9th Cir], *amended on other grounds* 777 F2d 543 [trunk of car]; *United States v Beale,* 736 F2d 1289 [luggage at airport]; *United States v Lewis,* 708 F2d 1078 [6th Cir] [same]; *Horton v Goose Creek Ind. School Dist.,* 690 F2d 470 [students' lockers and cars]; *United States v Waltzer,* 682 F2d 370 [2d Cir], *cert denied* 463 US 1210 [luggage at airport]; *United States v Johnson,* 660 F2d 21 [2d Cir] [same]; *United States v Viera,* 644 F2d 509, 510 [5th Cir], *cert denied* 454 US 867 [luggage at bus terminal];

---

detecting dogs are indiscriminately employed to sniff individuals or items in their possession *(see generally, United States v Jacobsen,* 466 US 109, 138 [Brennan, J., dissenting]; *Doe v Renfrow,* 451 US 1022, 1025-1026 [Brennan, J., dissenting from denial of certiorari from 631 F2d 91 (7th Cir)]; *Horton v Goose Creek Ind. School Dist.,* 690 F2d 470, 477-479 [5th Cir], *cert denied* 463 US 1207).

*United States v Klein,* 626 F2d 22 [7th Cir] [luggage at airport]; *United States v Sullivan,* 625 F2d 9, 13 [4th Cir], *cert denied* 450 US 923 [same]; *United States v Burns,* 624 F2d 95, 100-101 [10th Cir], *cert denied sub nom. Reynolds v United States,* 449 US 954 [briefcase in motel room]; *United States v Venema,* 563 F2d 1003, 1006-1007 [10th Cir] [storage locker]; *United States v Solis,* 536 F2d 880 [9th Cir] [exterior of semitrailer]; *United States v Bronstein,* 521 F2d 459 [2d Cir], *cert denied* 424 US 918 [luggage at airport]; *United States v Fulero,* 498 F2d 748 [DC Cir] [footlocker at bus terminal]; *People v Price, supra* [luggage at airport]; *People v Bannister,* 112 Misc 2d 770, 771 [crates at airport]; *cf., United States v Lovell,* 849 F2d 910 [agent's sniff of luggage at airport]).

In upholding canine sniffs and in concluding that they do not constitute searches, the cases generally rely on one or more of four distinct but overlapping rationales. First, the courts have noted that the procedure involves no intrusion into the item or place being sniffed because the dog does nothing more than detect odors emanating therefrom. The courts have recognized that there can be no reasonable expectation of privacy in the air surrounding the item or place being sniffed *(People v Price, supra,* at 561-562; *see, United States v Lovell, supra; United States v Lewis, supra; United States v Goldstein,* 635 F2d 356; *United States v Solis, supra,* at 881). Second, in applying that "plain smell" doctrine, the courts generally have been unconcerned with the sensory enhancement problem, i.e., the fact that a dog's superior senses have been employed to detect narcotics where a human's lesser developed sense of smell might prove unavailing. The courts have analogized the use of a dog to enhance an officer's sense of smell to the use of search lights and binoculars to enhance an officer's vision, and have distinguished use of the dog's sense of smell from the impermissible use of more technologically sophisticated devices, such as a magnetometer or X-ray machine *(People v Price, supra,* at 562-563; *United States v Beale, supra,* at 1291; *United States v Lewis, supra; Horton v Goose Creek Ind. School Dist., supra,* at 477; *United States v Solis, supra,* at 882; *United States v Bronstein, supra,* at 462). Third, the courts have noted that, even when the defendant is present during the dog sniff, but especially when he is not, canine sniffs are quickly and reliably accomplished in an inoffensive and unobtrusive manner and, for that reason, can actually spare the suspect the embarrassment and inconvenience of a full-blown search. Where the sniff is con-

ducted in the suspect's absence, and where police do not seize or occupy the item or place being sniffed, the courts have noted that there is no interference with either defendant's possessory rights or with his freedom of movement *(see, United States v Place, supra; United States v Beale, supra; United States v Bronstein, supra,* at 463; *United States v Solis, supra)*. Finally, the courts have relied on the fact that a canine sniff, virtually unique among investigative techniques, results in limited disclosure of the presence or absence of narcotics, a contraband item, and that no other information is revealed. For that reason, it has been held that a canine sniff compromises only the suspect's subjective expectation that the narcotics will remain undiscovered, but does not infringe upon any privacy expectation that society recognizes as legitimate *(United States v Place, supra; United States v Colyer, supra,* at 473-474; *see, United States v Jacobsen,* 466 US 109, 122-124).

We recognize that, because this case concerns a canine sniff of the exterior of defendant's apartment, the cases cited *supra* apply here only by analogy. To our knowledge, the sole decision that addresses the validity of a "residential sniff" is that of the Second Circuit in *United States v Thomas* (757 F2d 1359 [2d Cir], *cert denied sub nom. Wheelings v United States,* 474 US 819; *but see, United States v Dicesare, supra,* at 897-899 [upholding sniff of trunk of car, while avoiding question whether sniff of suitcase located within suspect's home, as distinct from the police entry of the home, was a search]; *see also, United States v Young,* 745 F2d 733, 744, 756-758 [2d Cir], *cert denied sub nom. Myers v United States,* 470 US 1084 [upholding warrant that was based in minor part upon canine sniff of door of apartment, without deciding validity of sniff]). In *Thomas,* the police obtained a warrant to search defendant's apartment based partially on information obtained by means of a canine sniff conducted outside the apartment. The Second Circuit concluded that the canine sniff constituted a warrantless search in violation of the Fourth Amendment and that, therefore, the dog's alert could not be used to support the warrant. The *Thomas* court distinguished *Place (supra)* and other canine sniff cases, reasoning that a defendant has a greater expectation of privacy in the contents of his apartment than in the contents of luggage that has been placed in the custody of a common carrier. The court disregarded the rationale employed by the Supreme Court in *Place,* concluding that, even if the canine sniff is more discriminating and less offensive than other detection methods, it nevertheless consti-

tutes a means of detecting the contents of a private, enclosed space. The *Thomas* court also implied that use of the dog constitutes an impermissible enhancement of the officers' own sense of smell *(United States v Thomas, supra,* at 1366-1367).

Our task is to decide whether to apply the rationale of *Thomas (supra),* that a canine sniff of a suspect's apartment door constitutes a search of the premises, or the holding of *Place (supra)* and numerous other cases that a canine sniff is not a search. The *Thomas* decision certainly has simplicity to recommend it because it relies primarily on the distinction between a residence and other items or places. We cannot fault the *Thomas* court's postulation, shared by the dissent here, that a person's expectation of privacy is strongest when it concerns activities inside his dwelling *(see, United States v Knotts,* 460 US 276, 282, 285; *United States v Taborda,* 635 F2d 131 [2d Cir]; *see generally, United States v Karo,* 468 US 705, *reh denied* 468 US 1250; *Payton v New York,* 445 US 573, 589-590; *United States v United States Dist. Ct.,* 407 US 297, 313; *People v Levan,* 62 NY2d 139, 144). Nevertheless, we find the *Thomas* decision unpersuasive because it contradicts or disregards the reasoning that has led numerous courts to conclude that a canine sniff of the exterior of an item or place does not constitute a search. In terms of the rationales employed by the courts that have examined the issue of canine sniffs, there is no distinction in principle between a suspect's residence and other items or places. Therefore, contrary to the reasoning of *Thomas,* we conclude that, if a sniff of a suitcase is not a search, neither is a sniff outside an apartment.

First, a search occurs only when the State infringes upon an expectation of privacy that society considers reasonable *(United States v Jacobsen, supra,* at 112). A suspect has no greater or more reasonable expectation of privacy in the public atmosphere outside his residence than in the public air outside his belongings.[4] It is well recognized that many illegal drugs give off distinctive odors that are detectable by trained canines and that, depending on the drug, may also be discernible to humans *(see, United States v Lovell, supra).* Clever criminals recognize that fact, as can be seen by their frequent attempts to mask the odor of narcotics with talcum powder, mothballs, coffee, perfume, and other substances *(see, e.g.,*

---

4. We reiterate that, in this procedural posture, we must assume that the police were lawfully in the common hallway outside defendant's apartment and thus conclude that, for the purpose of our analysis, the hallway was a public place.

*United States v Stone, supra,* 866 F2d, at 362; *United States v Solis,* 536 F2d 880, *supra; United States v Bronstein, supra,* at 461; *United States v Fulero,* 498 F2d 748, *supra; People v Price, supra; People v Fritschler,* 81 Misc 2d 106, 108-110). On prior occasions, defendant's apartment had exuded an odor of marihuana that was discernible to his police officer-neighbor. Defendant must have been aware of that. As demonstrated by the search warrant application, he used incense to mask the smell and, as established by the trial evidence, he placed a rolled up rug against the back of his apartment door to prevent the odor from escaping. Whether the odor emanates from a suitcase or a residence, "there can be no reasonable expectation that plainly noticeable odors will remain private" *(People v Price,* 54 NY2d, *supra,* at 562). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection" *(Katz v United States,* 389 US 347, 351; *see, United States v Colyer, supra,* 878 F2d, at 475). The dissent takes the position that "the dog intruded upon defendant's residence" and, citing *United States v United States Dist. Ct. (supra),* notes that " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed' ". We agree with that proposition but it does not apply to the facts presented here. The dog did not enter defendant's residence but merely sniffed the air outside the apartment.

Second, the sensory enhancement issue presents no greater problem in the context of a residential sniff than in other uses of these dogs. Especially where, as here, the particular drugs detected by the dog include marihuana, which can be detected by humans *(see, United States v Lovell, supra),* the use of a dog constitutes a permissible enhancement of the officers' own senses and represents no greater invasion of defendant's privacy than would an officer's sniff of the atmosphere *(People v Price, supra,* at 562-563; *Horton v Goose Creek Ind. School Dist., supra,* 690 F2d, at 477; *United States v Goldstein, supra; United States v Solis, supra,* at 882; *United States v Bronstein, supra,* 521 F2d, at 461-462). As the Supreme Court has stated in another context, "[n]othing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afford" *(United States v Knotts, supra,* 460 US, at 282). To the extent that *United States v Thomas (supra,* at 1367) suggests otherwise, it runs counter to the stream of authority.

Third, because defendant was not present during the sniff of the apartment, there was no greater intrusion on his Fourth Amendment rights than in the case of a sniff of an unattended item of personalty. The sniff of the exterior of defendant's apartment did not result in its "seizure" or occupation by police, and did not interfere with defendant's possessory rights *(cf., United States v Whitehead, supra,* 849 F2d, at 856; *United States v Beale, supra,* 736 F2d, at 1292). Further, there was no interference with defendant's freedom of movement *(cf., United States v Whitehead, supra; United States v Beale, supra,* at 1291-1292). Where the sniff is conducted without any contact with the owner of the item or place, he is not subjected to inconvenience or embarrassment *(United States v Waltzer, supra,* 682 F2d, at 373). In that sense, the canine sniff is much less intrusive than a search, which can cause inconvenience and humiliation to the owner even where it is conducted in his absence *(cf., United States v Place, supra; United States v Colyer, supra,* at 476-477; *United States v Hardy, supra,* 855 F2d, at 759; *United States v Beale, supra; United States v Waltzer, supra).*

Finally, a canine sniff of the exterior of a residence, like a sniff of an item of personalty, "discloses only the presence or absence of narcotics, a contraband item" and reveals nothing else about the contents of the suspect's apartment or his activities therein *(United States v Place, supra; United States v Colyer, supra,* at 474-475; *United States v Beale, supra,* 736 F2d, at 1291; *United States v Bronstein, supra,* 521 F2d, at 463; *cf., United States v Jacobsen, supra,* at 124, n 24). Society has decided "to treat the interest in 'privately' possessing (narcotics) as illegitimate" *(United States v Jacobsen, supra,* at 123). Thus, the limited nature of the information revealed by a canine sniff compels the conclusion that such technique interferes with no *legitimate* expectation of privacy *(United States v Colyer, supra,* at 474; *United States v Beale, supra,* at 1290-1292). That analysis calls into question the correctness of the *Thomas* court's conclusion that a suspect has a legitimate expectation of privacy with respect to the presence of narcotics in his dwelling *(United States v Colyer, supra,* at 475). In sum, we conclude that the canine sniff of the exterior of defendant's apartment did not infringe upon any legitimate and reasonable expectation of privacy and thus did not constitute a search within the meaning of the Fourth Amendment of the US Constitution or NY Constitution, article I, § 12.

In view of our determination, it is unnecessary for us to

reach defendant's final contention that, if the results of the canine sniff are excised from the application, the residue of the information contained therein is insufficient to support the warrant.[5] We merely note that numerous cases hold that the "alert" of a narcotics-detecting dog constitutes probable cause to suspect the presence of narcotics in the item or place sniffed, provided that the record contains sufficient indicia of the dog's training and reliability *(United States v Williams,* 726 F2d 661, 663; *United States v Spetz,* 721 F2d 1457, 1464 [9th Cir]; *United States v Waltzer, supra,* at 372; *see also, United States v Venema, supra,* 563 F2d, at 1007; *United States v Klein, supra,* 626 F2d, at 27; *United States v Race,* 529 F2d 12, 14 [1st Cir]; *cf., People v Edwards,* 69 NY2d 814, 816). Certainly probable cause is established where, as here, the dog's alert buttresses other facts and circumstances indicative of criminality *(Florida v Royer,* 460 US 491, 505-506; *United States v Bell,* 892 F2d 959 [10th Cir]; *United States v Colyer, supra,* at 483; *United States v Martin,* 876 F2d 1008, *supra; United States v Massac, supra,* 867 F2d, at 176; *United States v Stone, supra,* 866 F2d, at 364; *United States v Tartaglia,* 864 F2d 837, 841 [DC Cir]; *United States v Quinn, supra,* 815 F2d, at 159, 161; *United States v Sullivan, supra; United States v Robinson,* 707 F2d 811, 815 [4th Cir]; *United States v Johnson, supra; United States v Meyer,* 536 F2d 963 [1st Cir]; *People v Price, supra; People v Barronette,* 123 AD2d 707, 709-710, *lv denied* 69 NY2d 743).

Accordingly, the judgment should be affirmed.

LAWTON, J. (concurring). Initially I agree with the other members of the panel that probable cause to issue the search warrant did not exist without the dog sniff *(see, Sgro v United States,* 287 US 206, 210; *People v Edwards,* 69 NY2d 814, 816). Though I concur that the conviction should be affirmed, I cannot accept the majority's conclusion that the use by the police of a trained canine to sniff at the door of defendant's residence for controlled substances is not a search within the meaning of the Fourth Amendment. Both the State and Federal Constitutions provide the "right of the people to be

---

**5.** Were we to consider that claim, we would agree with our concurring and dissenting colleagues that, without the positive result of the canine sniff, the information in the warrant is stale and hence insufficient to establish probable cause. We would not agree with the dissent's comments with respect to the asserted lack of reliability of the information acquired by means of the firsthand observations of the informants, a police officer and a named citizen.

secure in their persons, houses, papers and effects, against unreasonable searches and seizures" *(see,* US Const 4th Amend; NY Const, art I, § 12). A search within the meaning of the Fourth Amendment "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed" *(United States v Jacobsen,* 466 US 109, 113). Further, it is axiomatic that a person has a legitimate expectation that the contents of his or her home would remain private. Indeed, a heightened expectation of privacy is possessed by those in their homes based on " 'the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic' " *(Oliver v United States,* 466 US 170, 178, quoting *Payton v New York,* 445 US 573, 601).

Here, the police used a trained dog to obtain information concerning the contents of defendant's apartment that they could not have obtained from the use of their own senses. In this regard, the police used a superior sensory instrument to penetrate and detect items within a closed dwelling which its owners would reasonably expect to remain private *(see, e.g., Katz v United States,* 389 US 347; *Clinton v Virginia,* 377 US 158).

Given defendant's heightened expectation of privacy in his home, I conclude that the dog sniff constituted a search within the meaning of the Fourth Amendment *(see, United States v Thomas,* 757 F2d 1359, 1366-1368 [2d Cir], *cert denied sub nom. Wheelings v United States,* 474 US 819). To hold otherwise, I believe, would inevitably lead to the police using trained dogs to roam indiscriminately through the corridors of public housing projects or educational dormitories seeking the presence of controlled substances or to roam randomly at public gatherings alerting the police to persons carrying drugs *(see, e.g., Horton v Goose Creek Ind. School Dist.,* 690 F2d 470, 479, *cert denied* 463 US 1207). I conclude that the authorization of such indiscriminate conduct would be considered by society to constitute an unreasonable infringement of its expectations of privacy and, therefore, constitutes a search within the meaning of the State and Federal Constitutions.

In my opinion, however, this does not end our inquiry. A dog sniff outside a dwelling is, as stated by Justice Denman, much less intrusive than a full-blown entry and search of a person's home. In this regard, a dog sniff does not require entry into the premises or contact with the owner of the premises along with the embarrassment and inconvenience

associated with a more intrusive search *(see, United States v Beale,* 736 F2d 1289, 1291-1292 [9th Cir], *cert denied* 469 US 1072).* Given the minimally intrusive nature of a dog sniff search, I believe that it is reasonable within the meaning of the State and Federal Constitutions if the police conduct is based on the *Terry v Ohio* (392 US 1) standard of reasonable suspicion *(see, United States v Place,* 462 US 696, 723 [Blackmun, J., concurring in result]; *People v Price,* 54 NY2d 557, 565 [Meyer, J., concurring in result]).* In this regard, as the *Terry* "stop and frisk" permits a limited invasion of an individual's rights in order to determine the presence of weapons and thereby protect the officer and the public, so also a dog sniff of a dwelling based on reasonable suspicion would permit a minimal intrusion of one's rights in order to determine the presence of drugs and by their seizure protect society. Indeed, permitting a search on less than probable cause is not a radical concept. In *New Jersey v T.L.O.* (469 US 325, 340-341), the court stated: " 'probable cause' is not an irreducible requirement of a valid search. The fundamental command of the Fourth Amendment is that searches and seizures be reasonable, and although 'both the concept of probable cause and the requirement of a warrant bear on the reasonableness of a search, . . . in certain limited circumstances neither is required.' *Almeida-Sanchez* v. *United States, supra,* at 277 (POWELL, J., concurring). Thus, we have in a number of cases recognized the legality of searches and seizures based on suspicions that, although 'reasonable,' do not rise to the level of probable cause. See, *e.g., Terry* v. *Ohio,* 392 U.S. 1 (1968); *United States* v. *Brignoni-Ponce,* 422 U.S. 873, 881 (1975); *Delaware* v. *Prouse,* 440 U.S. 648, 654-655 (1979); *United States* v. *Martinez-Fuerte,* 428 U.S. 543 (1976); cf. *Camara* v. *Municipal Court, supra,* at 534-539. Where a careful balancing of governmental and private interests suggests that the public interest is best served by a Fourth Amendment standard of reasonableness that stops short of probable cause, we have not

---

* In footnote 2, the majority members state that the quantum of suspicion necessary before conducting a canine sniff of a residence is not before this court on this appeal. This begs the question. Implicit in the text of the footnote is the expressed belief that there must be some degree of suspicion in order to conduct such a search. The end result is that we both have reached the same conclusion, but approach the issue from opposite poles. The majority members conclude that a canine sniff of an individual's residence is not a search; therefore, there can be no Fourth Amendment violation. But if there is no Fourth Amendment violation, what basis exists to limit the police conduct?

hesitated to adopt such a standard." Here, the adoption of a reasonable suspicion standard would permit the use of this accurate investigatory tool which greatly supports the strong societal and governmental interest in conducting the ongoing war on drugs. Further to require, as does the dissent, probable cause before allowing a dog sniff of an individual's dwelling would greatly curtail the use and advantages associated with this investigatory tool. Private interests are only slightly affected by the use of this minimally intrusive investigatory tool because it does not require contact with the dwelling owner or entry into the premises. Additionally, the use of trained dogs in this manner may be beneficial to law-abiding citizens. Indeed, a dog sniff, similar to the on-the-scene showup identification *(see, People v Hicks,* 68 NY2d 234, 242-244), provides the police with a quick and accurate determination of whether criminal activity is afoot without subjecting an individual to a lengthy police investigation of his activities. In this regard, it is much better that a dog sniff briefly at the exterior of a residence than that a surveillance team monitor an occupant's every move in an effort to obtain probable cause to obtain a search warrant.

Balancing the competing interest, I conclude that the public is best served and its rights adequately protected by permitting the police while lawfully on the premises to conduct a dog sniff search of the exterior of a residence so long as it is supported by reasonable suspicion *(see, United States v Place, supra,* at 723; *United States v Quinn,* 815 F2d 153, 159 [1st Cir]; *United States v Williams,* 726 F2d 661, *cert denied* 467 US 1245).

I further conclude from my review of the record that the police had reasonable suspicion to authorize the dog sniff. In determining whether reasonable suspicion exists " 'the relevant inquiry is not whether particular conduct is "innocent" or "guilty," but the degree of suspicion that attaches to particular types of noncriminal acts' " *(United States v Sokolow,* 490 US —, —, 109 S Ct 1581, 1587, quoting *Illinois v Gates,* 462 US 213, 244, n 13, *reh denied* 463 US 1237). Here, the observations of Sergeant Gellart, along with defendant's past involvement with controlled substances and the information from Jeffrey Osgood, defendant's building's maintenance man, although not rising to the level of probable cause, provided reasonable suspicion that defendant was engaging in criminal activities in his apartment to justify the dog sniff.

GREEN, J. (dissenting). We dissent. We agree that defendant was not entitled to a suppression hearing and has failed to preserve his challenge to the presence of the police and dog in the common hallway *(see,* CPL 710.70 [3]; *cf., People v Lott,* 102 AD2d 506). We disagree that the dog sniff did not constitute an illegal search.

At the outset, it is important to stress that the dog sniff was conducted at the door of defendant's apartment at the specific request of a police officer who was searching for evidence of a crime. The only case directly addressing such a procedure conducted at a doorway is the Second Circuit Court of Appeals opinion in *United States v Thomas* (757 F2d 1359, *cert denied sub nom. Wheelings v United States,* 474 US 819) which held that a dog sniff at a dwelling is a warrantless search in violation of the Fourth Amendment. Unlike the majority, we find the *Thomas* rationale most persuasive. Here, as in *Thomas,* and unlike the cases upon which the majority relies, the dog intruded upon defendant's residence in which defendant had not only a legitimate, but also a heightened expectation of privacy *(see, Payton v New York,* 445 US 573, 590). This is because "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" *(United States v United States Dist. Ct.,* 407 US 297, 313; *see also, People v Levan,* 62 NY2d 139, 144).

The majority holds these principles do not apply because "the dog did not enter defendant's residence but merely sniffed the air outside the apartment." The court in *Thomas* believed otherwise. A trained dog, like other devices used by the police (e.g., magnetometers or "spike-mikes"), may detect the contents of a private enclosed space, here defendant's residence, that the police could not otherwise obtain from the use of their own sense of smell. "In practical effect there is no difference between the emanations of odor sniffed by the dog and the sound vibrations sensed by such devices. Both originate from inside a private area and travel beyond its perimeters" *(People v Price,* 54 NY2d 557, 565 [Meyer, J., concurring]). Moreover, at the time of the dog sniff the apartment was vacant and there was no indication that any odor of illegal drugs was detectable to human olfactory senses. The precise reason the dog was brought to the apartment was to see if its sensitive nose could detect the odor of narcotics.

The court in *Thomas* was acutely aware of the sanctity of one's dwelling *(supra,* at 1366-1367): "Thus, a practice that is not intrusive in a public airport may be intrusive when

employed at a person's home. Although using a dog sniff for narcotics may be discriminating and unoffensive relative to other detection methods, and will disclose only the presence or absence of narcotics, *see United States v Place,* 103 S. Ct. at 2644, it remains a way of detecting the contents of a private, enclosed space. With a trained dog police may obtain information about what is inside a dwelling that they could not derive from the use of their own senses. Consequently, the officers' use of a dog is not a mere improvement of their sense of smell, as ordinary eyeglasses improve vision, but is a significant enhancement accomplished by a different, and far superior, sensory instrument. Here the defendant had a legitimate expectation that the contents of his closed apartment would remain private, that they could not be 'sensed' from outside his door. Use of the trained dog impermissibly intruded on that legitimate expectation." Although the *Thomas* decision was based on interpretation of the Fourth Amendment of the US Constitution, its holding is also supported by interpretation of article I, § 12 of the NY Constitution which affords greater protection under more exacting standards *(see, People v P. J. Video,* 68 NY2d 296, *cert denied* 479 US 1091).

We all agree that absent information obtained from the dog sniff there was no probable cause to support the search warrant *(see, People v Tambe,* 71 NY2d 492, 505; *People v Edwards,* 69 NY2d 814, 816). This is so not only because there is no assurance of the reliability of the hearsay information from Gellart and Osgood upon which Gramaglia relied in seeking the warrant *(see, People v Hendricks,* 25 NY2d 129, 134-137; *People v Simon,* 107 AD2d 196, 202), but also because this information was stale since Gramaglia failed to present the Magistrate with any information concerning a particular drug transaction in which defendant was involved near the time the warrant was issued *(see, Sgro v United States,* 287 US 206; *People v Christopher,* 101 AD2d 504, 527, *revd on other grounds* 65 NY2d 417, *rearg denied* 65 NY2d 1054).

Lastly, we note our disagreement with the concurring opinion which argues that although a dog sniff is a search it may be justified on less than probable cause. There are rare instances when this position may be appropriate but this is not one of them. Here, the serious invasion of defendant's privacy by the dog sniff at the front door of his residence is in no way analogous to a stop and frisk *(see, Terry v Ohio,* 392 US 1), or an administrative search *(see, Camara v Municipal Ct.,* 387

US 523) or a border search *(see, United States v Brignoni-Ponce,* 422 US 873) which may be justified on less than probable cause. There are no concerns implicated here involving an officer's safety or administrative expedience which are at the heart of these narrow exceptions to the general probable cause requirement under the Fourth Amendment. It is clear that *Terry v Ohio (supra)* and the cases that followed it permit only brief investigative stops and extremely limited frisks based on reasonable suspicion. "They do not provide the police with a commission to employ whatever investigative techniques they deem appropriate" *(United States v Place,* 462 US 696, 714 [Brennan, J., concurring]).

As noted at the outset, the police use of the trained dog in this case was not accidental. Rather, the dog sniff here was conducted at the specific request of a police officer who was searching for evidence of a crime behind the closed door of defendant's residence. Under such circumstances we agree with the *Thomas* rationale that this constitutes a search which must be supported by probable cause before, not after, the dog conducts the sniff. The concurrence permits a dog sniff to be conducted on less than probable cause and then uses the information from the sniff, to find probable cause to support the search warrant for defendant's residence. This reasoning is circular. The critical threshold issue is the intrusiveness of the search *(see, United States v Place, supra,* at 722 [Blackmun, J., concurring]). If a dog sniff of a defendant's residence constitutes a search, as the concurrence agrees it does, then it must be supported by probable cause prior to the sniff. The sniff, as in the case of any search, cannot be justified by what it turns up. It is fundamental law that a search is good or bad at its inception and cannot be justified by what is thereafter discovered *(United States v Di Re,* 332 US 581; *Johnson v United States,* 333 US 10).

Accordingly, the warrants issued for defendant's apartment were invalid. Therefore, we would reverse defendant's conviction and dismiss the indictment.

BOOMER, J., concurs with DENMAN, J. P.; LAWTON, J., concurs in a separate opinion; GREEN and DAVIS, JJ., dissent in an opinion by GREEN, J.

Judgment affirmed.